UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

|  |  |
|---|---|
|  | Case No.: 3:12-bk-00275-PMG |
|  | and Case No. 3:12-bk-00274-PMG |

KOON'S FARMS, INC.,

     Chapter 12 Debtor,

**and**

Jointly Administered Under
Case No. 3:12-bk-00275-PMG

SIDNEY CURTIS KOON and
JULIE SINGLETARY KOON,

     Chapter 12 Debtors.

_____/

LAFAYETTE STATE BANK, a Florida
corporation,

     Plaintiff,

v.

     Adv. Case No. 3: 12-ap-00098-PMG

RABO AGRIFINANCE, INC., a foreign
corporation; KOON'S FARMS INC., a
Florida corporation; SIDNEY KOON,
individually, and JULIE KOON,
individually,

     Defendants.

_____/

### JOINT MOTION FOR INTERVENTION OF MAYO FERTILIZER, INC., AS INTERESTED PARTY, AND FOR ENTRY OF FINAL CONSENT JUDGMENT

The Debtors, Koon's Farms, Inc. ("Koon's Farms"), Sidney Curtis Koon and Julie

Singletary Koon (collectively, the "Chapter 12 Debtors"), joined by secured creditors, Rabo

Agrifinance, Inc. ("Rabo"), Mayo Fertilizer, Inc. ("Mayo Fertilizer") and Lafayette State Bank

("Lafayette"), collectively referred to herein as the "Movants," by and through their respective

undersigned counsel, and pursuant to Federal Rule of Bankruptcy Procedure 7024, and Federal

Rule of Civil Procedure 24, and other applicable law, file this joint motion (the "Joint Motion"), and respectfully request that this Court (a) allow for the intervention of Mayo Fertilizer as an interested party-Defendant in the above-styled adversary proceeding, and (b) enter this Court's Final Consent Judgment, adjudicating the extent, validity and priority of the claims of the respective parties in certain escrowed funds deposited in the Lafayette State Bank Koon's Farms Escrow Account (the "Escrow Account"), and authorizing the distribution of said funds.  In support of this Joint Motion, the Movants state as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter and this joint motion (this "Joint Motion") pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this Joint Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND AND REQUEST FOR RELIEF

2.     On January 18, 2012 (the "Petition Date"), the Chapter 12 Debtors filed respective voluntary petitions for relief under Chapter 12 of the Bankruptcy Code, thereby initiating the above-captioned bankruptcy cases (the "Bankruptcy Cases").

3.     The Bankruptcy Cases were administratively consolidated by order of this Court entered on February 8, 2012 [Doc. Nos. 17, 34].

4.     Since the Petition Date, the Chapter 12 Debtors have continued in the ownership of their assets and operation of their businesses as debtors-in-possession, pursuant to Bankruptcy Code §1203, and the orders of this Court.

5.     Douglas W. Neway has been appointed in the Bankruptcy Cases as the Chapter 12 Trustee, pursuant to Bankruptcy Code §1202.

6.    On or about November 23, 2011, and prior to the Petition Date, Lafayette filed an action in the Circuit Court of the Third Judicial Circuit, in and for Lafayette County, Florida, captioned *Lafayette State Bank v. Rabo Agrifinance, Inc., a foreign corporation, Koon's Farm, Inc., a Florida corporation, Sidney Koon, individually, and Julie Koon, individually,* Case No. 11-204 CA (the "State Court Action").

7.    On or about January 27, 2012, a *Notice of Removal* [AP Doc. No. 1] was filed and the State Court Action was removed to this Court as an adversary proceeding and assigned Case No. 3:12-ap-00098-PMG (the "Adversary Proceeding").

8.    On February 8, 2012, this Court entered in the Bankruptcy Cases, an *Order Directing the Endorsement and Negotiation of Checks and the Establishment of Escrow Account Pending the Determination of Lien Priority Disputes Between Creditors, Lafayette State Bank and Rabo Agrifinance, Inc.* (the "Escrow Order") [Doc. No. 36].

9.    Pursuant to the terms of the Escrow Order, certain checks which represent aggregate funds of approximately One Million, Nine Thousand, Seven Hundred Twenty-four and 11/100 Dollars ($1,009,724.11), were endorsed and deposited into the Escrow Account established under the Escrow Order. Subsequent to the entry of the Escrow Order, an additional $5,333.53 has been deposited in the Escrow Account, bringing the total balance in the Escrow Account to approximately $1,018.057.64 (the "Escrow Funds").

10.    The Chapter 12 Debtors have recognized the existence of valid and perfected security interests in the Escrow Funds, in favor, respectively, of Rabo, Mayo Fertilizer and Lafayette (collectively, the "Interested Secured Creditors").

11.    Based upon the existence of these valid and perfected security interests, and further based upon the Chapter 12 Debtors' interest in payment of, and reduction to, certain

claims in the Bankruptcy Cases of the respective Interested Secured Creditors, the Chapter 12

Debtors desire to have the Escrow Funds paid to the respective Interested Secured Creditors in

accordance with the respective priority of the valid and perfected security interests possessed by

the Interested Secured Creditors.

12.    All parties to this Joint Motion have analyzed the respective priorities of the

Interested Secured Creditors' secured claims in the Escrow Funds, and have reached agreement

to this Court's entry of a Final Consent Judgment adjudicating the extent, validity, and priority of

the claims of the respective Interested Secured Creditors in the Escrow Funds, and authorizing

the distribution of same from the Escrow Account.

13.    Rabo possesses a first priority, valid and perfected security interest, in the Escrow

Funds, based upon Rabo's loan to the Chapter 12 Debtors (the "Rabo Loan"), and Rabo's UCC

filing 20100214154 dated March 10, 2010.    Rabo's first priority secured claim is properly

calculated as follows:

| | | |
|---|---|---|
| a. | Principal Balance of Secured Claim: | $ 700,570.21 |
| b. | Accrued Interest through 3/13/2012: | $  48,520.09 |
| c. | Accrued Attorneys' Fees and Costs: | $  61,300.00 |
| | **Total** | **$ 810,390.30** |

In addition to the foregoing, Rabo's secured claim shall bear interest at the per diem rate of

$102.05 per day, per day until paid in full from the Escrow Funds, representing per diem interest

calculated at the non-default rate of 5.244% per annum. Accordingly, Rabo's secured interest in

the Escrow Funds shall be adjudicated as valid and perfected to the extent of the amounts

calculated in this paragraph, and shall be paid in full from the Escrow Funds. This payment will

result in Rabo having no further claims in the Bankruptcy Cases. The entry of an order

approving this compromise, and a final judgment in the Adversary Proceeding shall be

conclusively and irrevocably deemed to be a full and final release and discharge of any and all claims and causes of action by and between Rabo (together with its predecessors, successors, legal representatives, officers, directors, employees, and agents) on the one hand and the Chapter 12 Debtors, or any of them, on the other which in any way pertains or relates to the Rabo Loan. Copies of the loan and security documents evidencing the secured claim of Rabo, are attached hereto as Composite Exhibit "A."

14.    Mayo Fertilizer possesses a second priority, valid and perfected security interest in the Escrow Funds, based upon Mayo Fertilizer being the assignee of certain additional claims and security interests of Producer's Credit Corporation, a/k/a ProPartners Financial, UCC filing 201104497695 dated April 29, 2011, in the amount of $397,653.35 with an aggregate principal balance of Mayo Fertilizer's claims in the total amount of $608,217.07, without consideration of accrued interest or attorneys' fees and costs.  Accordingly, Mayo Fertilizer's priority secured interest in the Escrow Funds should be adjudicated as valid and perfected to the extent of all remaining portions of the Escrow Funds, subject only to the first priority interest of Rabo to the extent noted in paragraph 13, above.   This payment will be a partial payment of Mayo Fertilizer's claims, and will result in Mayo Fertilizer retaining additional claims in the Bankruptcy Cases.  Copies of the loan and security documents evidencing the secured claims of Mayo Fertilizer, are attached hereto as Composite Exhibit "B."

15.    The Movants hereby stipulate that the foregoing constitutes a motion stating the grounds for Mayo Fertilizer's intervention in the Adversary Proceeding, and a pleading setting out Mayo Fertilizer's claim for which intervention is sought, consistent with the requirements of Federal Rule of Bankruptcy Procedure 7024, and Federal Rules of Civil Procedure 24(a)(2), 24(b)(1)(B), and 24(c), and other applicable law.

16.     Based upon the foregoing, the interests of Lafayette are not secured by the Escrow Funds. Accordingly, Lafayette will receive no disbursement of the Escrow Funds, but will retain its right to assert claims in the Bankruptcy Cases.

17.     The Movants hereto respectfully request entry of this Court's Final Consent Judgment adjudicating the foregoing security interests and secured claims in the Escrow Funds, and directing the distribution of said funds in the Escrow Account in accordance with this Court's Final Consent Judgment. The form of the proposed Final Consent Judgment is attached hereto as Exhibit "C."

WHEREFORE, the Chapter 12 Debtors, Rabo, Mayo Fertilizer and Lafayette, jointly and respectfully request that this Court grant this Joint Motion, provide for the intervention of Mayo Fertilizer as a party-defendant based upon its security interest in the Escrow Funds, and enter the proposed Final Consent Judgment, the form of which is attached hereto as Exhibit "C"; the Movants further seek such additional relief that this Court deems just and proper..

**DATED:** March 26, 2012

**THE DECKER LAW FIRM, P. A.**

/s/ Andrew J. Decker III
ANDREW J. DECKER, III
Florida Bar No.: 267211
decklaw@thedeckerlawfirm.com
320 White Avenue – Street Address
Post Office Drawer 1288 – Mailing Address
Live Oak, Florida 32064
Telephone: (386) 364-4440
Telecopier: (386) 364-4508
*Attorneys for Chapter 12 Debtors*

**GRAYROBINSON, P.A.**

/s/ Scott R. Lilly
SCOTT R. LILLY, ESQ.
Florida Bar No.: 0119245
scott.lilly@gray-robinson.com
S. GRIER WELLS, ESQ.
Florida Bar No.: 203238
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Telephone: (904) 598-9929
Facsimile: (904) 598-9109
*Attorneys for Mayo Fertilizer, Inc.*

**SHUTTS & BOWEN, LLP**

/s/ Andrew M. Brumby
ANDREW M. BRUMBY
Florida Bar No.: 0650080
abrumby@shutts.com
300 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
407-835-6901; 407-849-7201 (fax)
*Attorneys for Rabo Agrifinance, Inc*

**DAVIS SCHNITKER REEVES &
BROWNING, P.A.**

/s/  George T. Reeves
GEORGE T.REEVES
Florida Bar No.: 009407
tomreeves@earthlink.net
P. O. Box 652
Madison, Florida 32341
850-973-4186 850-973-8564 (fax)
*Attorneys for Lafayette State Bank*

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the forgoing has been furnished on this 27th day of March, 2012, via U.S. Mail and/or electronically through CM/ECF to the following: Andrew J. Decker, III, Esq., The Decker Law Firm, P. O. Drawer 1288, Live Oak, FL 32064-1288; Douglas W. Neway, Esq., Chapter 12 Trustee, P. O. Box 4308, Jacksonville, FL 32201, Koon's Farms, Inc., 1007 N.E. Shady Oaks Road, Mayo, FL 32066, Andrew M. Brumby, Esq., James A. Timko, Esq., Shutts & Bowe, LLP, 300 S. Orange Avenue, Suite 1000, Orlando, FL 32801 and George T. Reeves, Esq., Davis Schnitker Reeves & Browning, P. O. Box 652, Madison, FL 32341; Office of the United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801; and all the creditors on the attached matrix.

/s/ Andrew J. Decker, III
Attorney

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**

2010 Mar 10 10:19 AM

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

6477 RABO AGRIFINANC ****** 201002142154 ******

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

22329478

·FLFL

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one_ debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KOON'S FARMS, INC. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1007 NE SHADY OAKS ROAD | MAYO | FL | 32066 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | FL | 27-1506736  ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one_ debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| KOON | SIDNEY | C | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1007 NE SHADY OAKS ROAD | MAYO | ·FL | 32066 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one_ secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| RABO AGRIFINANCE, INC. | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One CityPlace Drive. Suite 200 | St. Louis | MO | 63141 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the following described property now owned or hereafter acquired by the Debtor (collectively, the "Collateral"): all of the Debtor's rights, title and interest in the following personal property of Debtor, wherever located, and now owned or hereafter acquired: farm products; accounts; chattel paper; inventory; instruments; documents; general intangibles (including Government Program Payments and Crop Insurance Proceeds); supporting obligations, and to the extent not listed above as original collateral, proceeds and products of the foregoing. The term "Government Program Payments" means payments, rights to payment whether or not earned by performance, accounts, general intangibles and benefits, relating or pertaining to payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts, contract reserve payments, under or from any preexisting, current or future federal or state governmental program; and "Crop Insurance Proceeds" means all proceeds of Federal crop insurance or multi-peril crop insurance.

☐ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp
tax is not required.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

| 22329478 | KOON'S FARMS, INC. | 10042900 |
|---|---|---|

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

Exhibit "A"

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

10. MISCELLANEOUS

**22329478-FL-0**

**8477 RABO AGRIFINANC**

File with: Florida   10042900   KOON'S FARMS, INC.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| KOON | SIDNEY | CURTIS | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1007 NE SHADY OAKS ROAD | MAYO | FL | 32066 | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest).

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

**10. MISCELLANEOUS**

22329478-FL-0

8477 RABO AGRIFINANC

File with: Florida      10042900      KOON'S FARMS, INC.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| KOON | SIDNEY | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1007 NE SHADY OAKS ROAD | MAYO | FL | 32066 | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S **or** ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check *only* if applicable and check *only* one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust    or ☐ Decedent's Estate

**18.** Check *only* if applicable and check *only* one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 01209-90T1 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

10. MISCELLANEOUS

22329478-FL-0

8477 RABO AGRIFINANC

| File with: Florida | 10042900 | KOON'S FARMS, INC. | |
|---|---|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| KOON | | JULIE | S. | |
| **11c. MAILING ADDRESS** | | **CITY** | **STATE** **POSTAL CODE** | **COUNTRY** |
| 1007 NE SHADY OAKS ROAD | | MAYO | FL   32066 | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| **12c. MAILING ADDRESS** | **CITY** | **STATE** **POSTAL CODE** | **COUNTRY** |

| 13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing. | 16. Additional collateral description: |
|---|---|

14. Description of real estate:

16. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

**10. MISCELLANEOUS**

22329478-FL-0

**8477 RABO AGRIFINANC**

| File with: Florida | 10042900 | KOON'S FARMS, INC. | |
|---|---|---|---|
| | | | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one_ name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

| OR | 11b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|---|---|
| | KOON | | | JULIE | | | | |
| 11c. MAILING ADDRESS | | | | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1007 NE SHADY OAKS ROAD | | | | MAYO | | FL | 32066 | |
| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | | | 11g. ORGANIZATIONAL ID #, if any | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S _or_ ☐ ASSIGNOR S/P's NAME - insert only one_ name (12a or 12b)

12a. ORGANIZATION'S NAME

| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| 12c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

| 13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing. | 16. Additional collateral description: |
|---|---|

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction
☐ Filed in connection with a Public-Finance Transaction

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/21/09)

Prepared by CT Lien Solutions, P.O. Box 29071 Glendale, CA 91209-9071 Tel (800) 331-3282

KOON'S FARMS, INC.
$1,000,000 Non-Revolving Line of Credit No.10042900 - JM

## AGRICULTURAL SECURITY AGREEMENT

This Agricultural Security Agreement ("Agreement") is dated as of March 02, 2010 and is between KOON'S FARMS, INC., a FL corporation; SIDNEY C. KOON (A/K/A SIDNEY CURTIS KOON, SIDNEY KOON), an individual; and JULIE S. KOON (A/K/A JULIE KOON), an individual (individually and collectively, "Debtor"); and RABO AGRIFINANCE, INC., a Delaware corporation ("Secured Party").

Debtor and Secured Party are parties to the Agricultural Credit Agreement dated as of the date of this Agreement (the "Credit Agreement") under which Secured Party has agreed to make one or more loans to Debtor (the "Loan" whether one or more).

1.   Grant of Security Interest. Debtor hereby grants a security interest in the Collateral (defined herein) to Secured Party to secure the payment or performance of the Secured Obligations (defined herein).

2.   "Collateral" means all of the Debtor's rights, title and interest in the following personal property of Debtor, wherever located, and now owned or hereafter acquired:  FARM products; accounts; chattel paper; inventory; instruments; documents; general intangibles (including Government Program Payments [defined herein] and Crop Insurance Proceeds [defined herein]); supporting obligations, and to the extent not listed above as original collateral, proceeds and products of the foregoing.

3.   "Secured Obligations" means: (a) all Obligations (defined in the Credit Agreement); (b) payment and performance of all obligations of Debtor under this Agreement; (c) payment and performance of all other obligations of Debtor to Secured Party, whether now existing or hereafter incurred or created, whether voluntary or involuntary, whether due or not due, whether absolute or contingent, or whether incurred directly or acquired by Secured Party by assignment or otherwise; (d) any of the foregoing that arises after the filing of a petition by or against Debtor under the Bankruptcy Code, even if the obligations do not accrue because of the automatic stay under Bankruptcy Code §362 or otherwise; and (e) all sums owed under any modifications, renewals or extensions of any of the foregoing obligations.

4.   Perfection of Security Interests. Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Security Agreement or where Secured Party chooses to perfect its security interest by possession in addition to filing of a financing statement. Where Collateral is in the possession of a third party, Debtor shall join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that is holding the Collateral for the benefit of Secured Party. Debtor shall cooperate with Secured Party in obtaining control with respect to Collateral consisting of:  deposit accounts, investment property, letter-of-credit rights, and electronic chattel paper. Debtor shall not create any chattel paper without placing a legend on the chattel paper acceptable to Secured Party indicating that Secured Party has a security interest in the chattel paper.

5.   Representations and Warranties. Debtor represents and warrants that Debtor: (a) is the sole owner of the Collateral; (b) is authorized to grant a security interest in the Collateral; (c) has not previously granted a security interest in the Collateral to any person (other than Secured Party and those security interests previously disclosed in writing to Secured Party); and (d) holds title to the Collateral free of any Lien in, or offset or claim against the Collateral, except (i) the Liens created under the Collateral Documents, (ii) Liens for taxes not yet due, (iii) Liens, offsets and claims disclosed in writing to Secured Party as of the date of this Agreement, and (iv) additional Liens permitted under this Agreement.

6.   Nature of Collateral.  The Collateral shall remain personal property at all times. Debtor shall not affix any of the Collateral to any real property in any manner which would change its nature from that of personal property to real property or to a fixture. To the extent Debtor uses the Loan to purchase Collateral, Debtor's repayment of the Loan shall apply on a "first-in-first-out" basis so that the portion of the Loan used to purchase a particular item of Collateral shall be paid in the chronological order the Debtor purchased the Collateral.

7.   Chattel Paper, Documents and Instruments. Upon request by Secured Party, Debtor shall deliver to Secured Party, duly endorsed when necessary, all items of Collateral consisting of chattel paper and instruments and supporting obligations. Debtor shall preserve all rights in chattel paper and instruments against prior parties.

8.  Inspection of Collateral.  Secured Party may inspect any Collateral at any time upon reasonable notice. Debtor irrevocably authorizes Secured Party and its agents or representatives to enter Debtor's premises from time to time to inspect the Collateral.

9.  Location of Collateral.  Upon request by Secured Party, Debtor shall provide Secured Party with the location of all tangible personal property Collateral.

10.  Care of Collateral.  Debtor shall: (a) at all times maintain Collateral which is tangible property in good condition and repair, shall not permit its value to be impaired and shall not waste or destroy the Collateral or any part of it or permit the same to be so wasted or destroyed; (b) keep records pertaining to the Collateral in a manner satisfactory to Secured Party; and (c) immediately forward to Secured Party all information that Debtor may have or receive with respect to the Collateral or any account debtor which would materially impair the value of the Collateral or Secured Party's rights or remedies with respect thereto.  Debtor shall not use or permit any other person to use any of the Collateral (i) in any manner prohibited by law; (ii) in violation of any Policy; (iii) contrary to the terms and conditions of this Agreement; or (iv) in any manner inconsistent with the interests of Secured Party.  Debtor shall not make any material change to the Collateral.

11.  Taxes and Assessments.  Debtor shall pay when due all taxes, assessments and any other governmental levy which is, or may be, levied against any of the Collateral.

12.  Liens and Encumbrances.  Debtor shall not create, assume or allow any Lien in, or offset or claim against Debtor's property, except (a) the Liens created under the Collateral Documents; (b) Liens for taxes not yet due; (c) Liens, offsets and claims disclosed in writing to Secured Party as of the date of this Agreement; (d) purchase money security interests in equipment acquired after the date of this Agreement; and (e) additional Liens permitted by Secured Party, in writing.  Debtor shall defend the Collateral, at Debtors expense, against all other persons or parties who, at anytime, may claim an interest contrary to the terms and conditions of this Agreement.

13.  Sale or Other Disposition of FARM Products and Other Collateral.  Debtor shall not sell, lease, assign, license, discount, transfer, or otherwise dispose of, any Collateral except as expressly permitted by Secured Party, in writing.  Any check or other instrument of payment of the proceeds of a sale permitted by Secured Party shall be payable to Secured Party singularly, or payable jointly to Debtor and Secured Party.  If the amount of proceeds is greater than the unpaid Obligations, Secured Party shall remit the excess to Debtor or any other party reasonably determined by Secured Party to be entitled thereto.

14.  Effective Financing Statements.  If any of the Collateral consists of FARM products to be sold or stored in a state providing for notification of buyers of FARM products by means of an Effective Financing Statement ("EFS"), or if Secured Party determines that it would be in its interests to file an EFS in any state, then Debtor shall furnish Secured Party all information required by Secured Party for purposes of filing an EFS, sign the EFS, and take all other steps required by Secured Party for purposes of filing an EFS in those states.

15.  Storage.  Debtor shall not store the Collateral in warehouse facilities or other locations without prior written consent of Secured Party.  If requested by Secured Party, the form of warehouse receipt proposed to be issued upon any storage of Collateral shall be provided to the Secured Party for its review prior to completion of the transaction.  At the option of Lender, any negotiable or non-negotiable warehouse receipt issued upon storage of the Collateral shall be delivered directly to Secured Party.  With respect to non-negotiable warehouse receipts issued upon storage of the Collateral, Debtor shall provide Secured Party evidence of notification of the bailee of Secured Party's security interest in the Collateral as well as endorsement thereon of Secured Party as the sole party entitled to delivery of the Collateral with respect to which the warehouse receipt was issued.

16.  Risk of Loss; Crop Insurance, and Other Insurance.  Debtor has the risk of loss of the Collateral.  Debtor shall maintain or cause to be maintained: (a) all risk property damage insurance covering Collateral other than the crops which is tangible property, for the full insurable value thereof ("Personal Property Insurance"); and (b) such additional insurance required by Secured Party from time to time (that Personal Property Insurance and other insurance, "Required Insurance").  All policies of Required Insurance ("Policies") shall be issued by companies approved by Secured Party, acceptable to Secured Party as to form, deductibles, expiration dates, and provide that they shall not be denied renewal, materially changed (other than to increase the coverage provided), cancelled or terminated, nor shall they expire, without at least thirty (30) days' prior written notice to Secured Party in each instance.  All Personal Property Insurance and, to the extent applicable, all other Required Insurance, shall include any endorsements required by Secured Party for purposes of making the proceeds thereof payable to Secured Party to the extent of Secured Party's interest.  Upon request by Secured Party, Debtor shall furnish Secured Party with duplicate Policies or other evidence of Required Insurance.  If requested by Secured Party, Debtor shall provide

2

evidence of renewal and replacement of Policies not less than 20 days prior to the Policy expiration date. If Debtor fails to maintain or cause to be maintained any Policies, Secured Party may (but shall not be obligated to) obtain the Required Insurance at Debtor's expense. Debtor shall immediately notify Secured Party of any loss or damage to any Collateral, file proof of loss in accordance with the applicable Policies in a timely manner, and take all other steps necessary or appropriate to collect all proceeds payable under the Policies as a result of such loss or damage. Debtor authorizes Secured Party to endorse in the name of Debtor, any check or other instrument for purposes of payment of (and irrevocably directs the insurer to pay) the proceeds of the Policies to Secured Party. Secured Party may, at its option, apply any proceeds of the Policies received by Secured Party toward payment of the Secured Obligations.

17. <u>Government Programs</u>. Debtor shall execute and deliver to Secured Party all assignments, transfers and other documents required by the Secured Party to transfer, convey and assign to the Secured Party payments, rights to payment whether or not earned by performance, accounts, general intangibles and benefits, relating or pertaining to payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts, contract reserve payments, under or from any preexisting, current or future federal or state governmental program (collectively, "<u>Government Program Payments</u>"). Debtor shall comply with the provisions of all federal or state government programs, agreements and contracts to which it is a party, and shall not engage in activities which contribute to excessive erosion of highly erodible land or the conversion of wetlands to produce an agricultural commodity. Debtor shall immediately advise Secured Party of Debtor's receipt of notification from any agency of the Department of Agriculture or any other agency of the United States of such agency's intention to withhold or set off against any indebtedness of Debtor owed to such department or agency any amounts (whether in cash or in kind) approved and otherwise available for disbursement to Debtor as a result of Debtor's participation in programs administered by the Department of Agriculture or any agency thereof.

18. <u>Collection Rights</u>. At any time before or after an Event of Default, Secured Party may, and upon request of the Secured Party the Debtor shall notify any account debtor or obligor of any account, instrument, chattel paper, other right to payment or general intangible constituting Collateral that the same has been assigned to Secured Party and shall direct such account debtor or obligor to make all future payments directly to Secured Party.

19. <u>Subordination of other Interests</u>. If requested by Secured Party, Debtor shall furnish Secured Party with executed subordination agreements in such form as Secured Party shall require from Debtor's landlord(s) (if any) and any other person claiming an interest in the Collateral, pursuant to which that person agrees that: (a) its interests in the Collateral shall be subordinate to the Secured Party's interest in the Collateral; (b) so long as any Secured Obligations are unpaid or Secured Party has any commitment under the Credit Agreement it will not exercise any rights it may have in the Collateral; and (c) it will remit to Secured Party any sums received from the sale or other disposition of the Collateral.

20. <u>Events of Default</u>. The occurrence of any of the following shall constitute an "<u>Event of Default</u>" under this Agreement: (a) any Secured Obligation is not paid when due; (b) any term, covenant, or agreement contained in the Loan Documents is not performed or observed as required under the terms of the Loan Documents; (c) any warranty or representation contained in the Loan Documents proves to be false or materially misleading; or (d) any other Event of Default under the Credit Agreement.

21. <u>Remedies</u>. Upon an Event of Default, Secured Party may: (a) declare the Secured Obligations to be due and payable, without presentment, notice of intent to accelerate or notice of acceleration, demand, protest or further notice of any kind, all of which are hereby expressly waived by Debtor; (b) require Debtor to assemble all or any part of the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties; (c) exercise all other rights and remedies afforded to Secured Party under the Loan Documents or applicable law, including the Uniform Commercial Code. If notice to Debtor of any intended disposition of Collateral or other action is required, such notice shall be deemed reasonably and properly given if provided in the manner specified in the Credit Agreement at least ten (10) days prior to the action described in such notice.

22. <u>WAIVER OF EXEMPTION</u>. DEBTOR HEREBY WAIVES ALL EXEMPTIONS IN AND TO THE COLLATERAL.

23. <u>Further Assurances</u>. Debtor shall, at its expense, execute, deliver, file, record or perform (in such manner and form as Secured Party may require) any assignment, financing statement, paper or act requested by Secured Party for the purpose of creating, evidencing, preserving or perfecting any security interest hereby granted or to enable Secured Party to exercise and enforce its rights hereunder or with respect to any of the Collateral.

3

24. <u>POWER OF ATTORNEY</u>. TO FACILITATE THE PERFORMANCE OF THE AGREEMENTS OF DEBTOR UNDER THE LOAN DOCUMENTS, SECURED PARTY, IN THE NAME AND ON BEHALF OF DEBTOR OR, AT ITS OPTION, IN ITS OWN NAME, MAY (BEFORE OR AFTER AN EVENT OF DEFAULT) PERFORM OR OBSERVE ANY OBLIGATION OF DEBTOR TO SECURED PARTY AND TAKE ANY ACTION WHICH SECURED PARTY MAY DEEM NECESSARY OR DESIRABLE TO CURE OR CORRECT SUCH FAILURE. DEBTOR IRREVOCABLY AUTHORIZES SECURED PARTY AND GRANTS SECURED PARTY A POWER OF ATTORNEY IN THE NAME AND ON BEHALF OF THE DEBTOR OR, AT ITS OPTION, IN ITS OWN NAME, COUPLED WITH AN INTEREST, TO COLLECT, RECEIVE, RECEIPT FOR, CREATE, PREPARE, COMPLETE, EXECUTE, ENDORSE, DELIVER, AND FILE ANY AND ALL INSURANCE APPLICATIONS, REMITTANCES, INSTRUMENTS, DOCUMENTS, CHATTEL PAPER, AND OTHER WRITINGS, TO GRANT AN EXTENSION TO, COMPROMISE, SETTLE, WAIVE, NOTIFY, AMEND, ADJUST, CHANGE, AND RELEASE ANY OBLIGATION OF ANY ACCOUNT DEBTOR, OBLIGOR, INSURER, OR OTHER PERSON PERTAINING TO ANY COLLATERAL, AND TAKE ANY OTHER ACTION DEEMED BY SECURED PARTY TO BE NECESSARY OR DESIRABLE TO ESTABLISH, PERFECT, PROTECT, OR ENFORCE THE SECURED PARTY'S INTEREST IN THE COLLATERAL. Debtor shall execute FSA/CCC Power of Attorney forms and any other documents required to enable Secured Party to execute any and all documents necessary for application for, compliance or reporting of necessary information for all FSA/CCC programs. Secured Party has no duty to exercise any of the authority granted in this paragraph. Secured Party shall not be liable for any act or failure to act in connection with the collection of or the preservation of any rights with respect to the Collateral described in this paragraph.

25. <u>Definitions, Drafting Covenants</u>. Capitalized terms used in this Agreement without definition have the meanings given them in the Credit Agreement. Any term used in the Uniform Commercial Code (the "<u>UCC</u>") and not defined in this Security Agreement or the Credit Agreement has the meaning given to the term in the UCC. This Agreement shall be subject to the drafting conventions for Loan Documents specified in the Credit Agreement.

26. <u>JOINT AND SEVERAL OBLIGATIONS</u>. IF DEBTOR CONSISTS OF MORE THAN ONE PERSON, EACH OF DEBTORS IS JOINTLY AND SEVERALLY LIABLE FOR ALL OBLIGATIONS.

Debtor has signed and delivered this Agreement as of the day and year first above written.

DEBTOR:

KOON'S FARMS, INC., a FL corporation

By: _____
SIDNEY C. KOON (A/K/A SIDNEY CURTIS
KOON, SIDNEY KOON),
PRESIDENT

By: _____
JULIE S.. KOON (A/K/A JULIE KOON),
VICE PRESIDENT

_____
SIDNEY C. KOON (A/K/A SIDNEY CURTIS KOON,
SIDNEY KOON)

_____
JULIE S. KOON (A/K/A JULIE KOON)

KOON'S FARMS, INC.
Line of Credit #10042900 - JM

## NON-REVOLVING LINE OF CREDIT NOTE

March 02, 2010

$1,000,000.00

FOR VALUE RECEIVED, the undersigned (individually and collectively, "Borrower"), hereby promise to pay to the order of RABO AGRIFINANCE, INC., a Delaware corporation ("Lender") the principal sum of One Million and 00/100 Dollars ($1,000,000.00) or, if less, the aggregate principal sum of all Line of Credit Loans (defined in the Credit Agreement referenced below) made by Lender to Borrower.

Borrower promises to pay interest on the unpaid principal balance of this Line of Credit Note at such rates as are specified in the Credit Agreement. Both principal and interest are payable to Lender at such times as are specified in the Credit Agreement. All payments shall be made to Lender in lawful money of the United States of America at One CityPlace Drive, Suite 200, St. Louis, MO 63141 or such other place as Lender directs, in same day funds.

This Line of Credit Note is the Line of Credit Note referred to in and is entitled to the benefits of the Agricultural Credit Agreement between Borrower and Lender dated as of the date hereof (as the same may be amended or modified from time to time, the "Credit Agreement"). The Credit Agreement, among other things, (i) provides for the making of Line of Credit Loans by Lender to Borrower from time to time in an aggregate amount not to exceed at any time outstanding the amount first above mentioned, and (ii) contains provisions for acceleration of the maturity hereof upon the happening of certain stated events.

This Line of Credit Note is secured by the Collateral Documents (as defined in the Credit Agreement) and any other collateral or security documents now or hereafter executed and delivered by Borrower to Lender.

Borrower has signed and delivered this Line of Credit Note as of the day and year first above written.

KOON'S FARMS, INC., a FL corporation

By: _____
SIDNEY C. KOON (A/K/A SIDNEY CURTIS KOON,
SIDNEY KOON),
PRESIDENT

By: _____
JULIE S. KOON (A/K/A JULIE KOON),
VICE PRESIDENT

_____
SIDNEY C. KOON A/K/A SIDNEY CURTIS KOON,
SIDNEY KOON)

_____
JULIE S. KOON (A/K/A JULIE KOON),

## AGRICULTURAL CREDIT AGREEMENT

This Agricultural Credit Agreement ("Agreement") is dated as of March 02, 2010 and is between KOON'S FARMS, INC., a FL corporation; SIDNEY C. KOON (A/K/A SIDNEY CURTIS KOON, SIDNEY KOON), an individual; and JULIE S. KOON (A/K/A JULIE KOON), an individual (individually and collectively, "Borrower") and RABO AGRIFINANCE, INC., a Delaware corporation ("Lender"). All capitalized terms shall have the meanings defined in this Agreement.

1.    Non-Revolving Line of Credit. From the effective date of this Agreement through the Line of Credit Maturity Date (defined below, the "Line of Credit Availability Period"), subject to the terms and conditions of this Agreement, Lender will make loans to Borrower (those loans, the "Line of Credit Loans") in the total aggregate amount of One Million and 00/100 Dollars ($1,000,000.00) (the "Line of Credit Facility") for the purpose of 2010 CROP OPERATING EXPENSES and the fees, if any, and expenses to be paid by Borrower under this Agreement. The Line of Credit Loans shall be evidenced by a single promissory note of Borrower in a form provided by Lender (the "Line of Credit Note").

(a)    Conditions Precedent. Each Line of Credit Loan is subject to the condition that: (i) Lender receive an Advance Request (defined herein); and (ii) on the date of the Line of Credit Loan the following statements are true (and the receipt of the proceeds of that Line of Credit Loan by Borrower shall be deemed a representation and warranty by Borrower that they are true) on that date: (A) Borrower's representations and warranties in this Agreement and the other Loan Documents are correct on and as of the date of the Line of Credit Loan as though made on and as of that date; (B) no event which is, or with notice or lapse of time or both would be, an Event of Default, has occurred or would result from the additional Line of Credit Loan; (C) there has been no Material Adverse Effect on the Borrower or any Guarantor (defined herein) or Accommodation Party (defined herein); (D) the unpaid principal balance of the Line of Credit Loans, together with the amount of such additional Line of Credit Loan does not exceed the Line of Credit Facility.

(b)    "Advance Request" means a request specifying the amount of the Line of Credit Loan, and the requested date of disbursement. At the option of Lender, (i) Line of Credit Loans made in response to Line of Credit Requests received by Lender less than one Banking Day before the requested date of disbursement shall, at the option of Lender, be disbursed up to one Banking Day after receipt of that Line of Credit Request; and (ii) Line of Credit Requests received after 12:00 noon (St. Louis, Missouri time) shall be deemed to have been received and be effective on the next Banking Day. If all of the applicable conditions to the Line of Credit Loan have been fulfilled, Lender shall make the Line of Credit Loan available to the Borrower as set forth in the Advance Request by, at the option of Lender, (a) depositing the proceeds in the account designated in writing by the Borrower; (b) if applicable, transferring the proceeds to an agent designated for purposes of the escrowed closing of this transaction by wire or ACH transfer; or (c) paying or applying the proceeds as otherwise permitted under this agreement, by any means appropriate under the circumstances.

(c)    Interest. Interest shall accrue on the unpaid principal balance of the Line of Credit Loans at a rate per annum equal to the Base Rate (defined herein) plus +5.00% (that rate of interest, the "Line of Credit Rate"). The term "Base Rate" means a fluctuating rate of interest equal to the one (1) month London Interbank offered rate as published in the "Money Rates" section of The Wall Street Journal on the Banking Day immediately preceding the Adjustment Date (defined herein) (or, if such source is not available, such alternate source as determined by Lender), as adjusted from time to time in Lender's sole discretion for reserve requirements, deposit insurance assessment rates and other regulatory costs. The interest rate shall be adjusted on APRIL 1, 2010 and on the first day of each subsequent one (1) month period (each of those dates, an "Adjustment Date") and remain fixed until the next Adjustment Date.

(d)    Mandatory Payments. If at any time the unpaid principal balance of the Line of Credit loans is greater than the Line of Credit Facility, Borrower immediately upon demand by Lender shall pay the difference to Lender.

(e)    Repayment and Reborrowing. Any amount borrowed, even if repaid during the Line of Credit Availability Period permanently reduces the remaining available Line of Credit Facility and may not be reborrowed.

(f)    Payment in Full. The unpaid principal balance of the Line of Credit Loans and all accrued unpaid interest thereon shall be paid no later than March 1, 2011 (the "Line of Credit Maturity Date").

2.    Loan Fee. In consideration of this Agreement, Borrower shall pay Lender a loan fee in the amount of $2,500 (the "Loan Fee"). The Loan Fee is fully earned and non-refundable upon acceptance of this Agreement by Lender. Borrower requests and authorizes Lender to make a Line of Credit Loan for purposes of payment of the Loan Fee.

3.  Oral Requests, Confirmations. Notwithstanding the requirement that all Notices shall be in writing, Borrower hereby requests Lender to rely upon and honor (and Lender may, at its option, rely upon and honor) telephonic, telefax, or email notices, requests, or instructions for advances or repayments, given, or purported to be given, on behalf of Borrower. Lender shall incur no liability for its acts or omissions which result from interruption of communications, misunderstood communications, or notices, requests, or instructions from unauthorized persons, unless caused by the willful misconduct of Lender or its officers or employees. Borrower shall immediately review all confirmations, if any, sent to Borrower by Lender. These confirmations, if any. will not be legal contracts, but only evidence of the valid and binding oral contract which Borrower has already entered into with Lender.

4.  Interest Apportionment. Interest on the Loans shall be calculated on the basis of a 360 day year and the actual days elapsed. At the option of Lender, to the extent permitted by applicable law, interest, fees or costs that are not paid when due under this Agreement shall bear interest from the due date at the Default Rate.

5.  Default Interest. Upon an Event of Default all principal and, to the extent permitted by applicable law, all interest, fees and other amounts due under the Loan Documents, shall bear interest at the rate per annum equal to 5.0% over the rate otherwise provided under this Agreement per annum (that rate, the "Default Rate"). That interest shall continue to accrue at the Default Rate from the date on which the Event of Default occurred until the date Lender acknowledges in writing that that Event of Default is waived or cured or all Obligations are paid in full. Interest at the Default Rate shall be paid in full from time to time on demand by Lender to Borrower or, if not previously demanded, on the first Banking Day of each calendar month.

6.  Maximum Rate. Notwithstanding the provisions of this Agreement to the contrary, at no time shall Borrower be obligated or required to pay interest in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay without subjecting Lender to either civil or criminal liability or otherwise limiting Lender's rights under the Loan Documents (that rate, the "Maximum Rate"). If Borrower is at any time required or obligated to pay interest at a rate in excess of the Maximum Rate, the applicable rate shall be deemed to be immediately reduced to the Maximum Rate and all previous payments in excess of the Maximum Rate shall be deemed to have been payments in reduction of principal, and not on account of the interest.

7.  Representations and Warranties. Borrower represents and warrants that: (a) Borrower is engaged in the business of FARMing; (b) all proceeds of the Loans will be used primarily for commercial agricultural purposes; (c) Borrower's correct legal name is as shown next to Borrower's signature below; (d) the address of Borrower's residence, or if Borrower is other than a natural person, the address of Borrower's place of business, or if Borrower has more than one place of business, then the address of Borrower's chief executive office, is shown next to Borrower's signature below; (e) if Borrower is a natural person, Borrower is of the age of majority and may enter into contracts which are enforceable under the laws of the state of Borrower's residence; (f) if Borrower is anything other than a natural person, it is duly organized and validly existing under the laws of the state of its organization, is qualified and in good standing in all states in which it is doing business, and the execution, delivery and performance of this Agreement and the other Loan Documents to which it is a party are within its powers, have been duly authorized, and are not in contravention of any law or the terms of its governing documents; (g) this Agreement and the other Loan Documents to which Borrower is a party are enforceable against Borrower in accordance with their terms and any instrument or agreement required hereunder or thereunder, when executed and delivered, shall be similarly legal, valid, binding and enforceable; (h) the Financial Information is complete and accurate in all material respects as to the financial condition of Borrower and any Guarantor or Accommodation Party (and, if applicable, any partners, shareholders, members, or other principals of Borrower or any Guarantor or Accommodation Party) and since the date such Financial Information was provided to Lender, there has been no material change in the financial condition of Borrower (and, if applicable, such other persons); (i) all information submitted to Lender by or on behalf of Borrower or any Guarantor or Accommodation Party in connection with this Agreement and the other Loan Documents is correct, complete, and not misleading in any material respect; (j) there is no lawsuit, tax claim or other dispute pending or threatened against Borrower or any Guarantor or Accommodation Party; (k) neither Borrower, nor eny Guarantor or Accommodation Party is the subject of any judgment, writ, injunction, decree, or rule of any court, arbitrator or other governmental authority; (l) Borrower and Guarantors have filed all tax returns (federal, state, and local) required to be filed and have paid all taxes, assessments, and governmental charges and levies thereon to be due, including interest and penalties; (m) Borrower has not received any notice of violation of any applicable laws, and there are no claims, actions, proceedings or investigations pending or threatened against Borrower, any Guarantor, any Accommodation Party, or affecting the Collateral, with respect to any violations of applicable laws; and (n) Borrower knows of no event which is, or with notice or lapse of time or both would be, an Event of Default. BORROWER'S SUBMISSION OF ANY REPORT, RECORD OR OTHER INFORMATION, FROM TIME TO TIME, WHETHER OR NOT REQUIRED UNDER THE LOAN DOCUMENTS, WILL BE DEEMED TO BE ACCOMPANIED BY A REPRESENTATION AND WARRANTY BY BORROWER THAT SUCH REPORT, RECORD OR

INFORMATION IS COMPLETE AND ACCURATE IN ALL MATERIAL RESPECTS, AS OF THE DATE OF SUCH SUBMISSION.

8.    Affirmative Covenants. So long as any Obligations are unpaid or Lender has any commitment under this Agreement, Borrower shall:  (a) use the proceeds of the Loans only for the purposes specified in this Agreement; (b) notify Lender not less than thirty (30) days prior to a change in the name, residence, place of business, or chief executive office of Borrower, as applicable; (c) if Borrower is anything other than a natural person, Borrower shall preserve and maintain its existence and good standing in the jurisdiction of its formation, and qualify and remain qualified to conduct its business in each jurisdiction in which such qualification is required; (d) keep adequate records and books of account, in which complete entries shall be made in accordance with GAAP, consistently applied, reflecting all financial transactions of Borrower; (e) furnish Lender with all other reports, records or other information pertaining to the condition or operations, financial or otherwise, of Borrower, as Lender may from time to time request; (f) at any reasonable time and from time to time, permit Lender or any of its agents or representatives to examine and make copies of and abstracts from the records and books of, and visit the properties of, Borrower and to discuss the affairs, finances, and accounts of Borrower with (if Borrower is other than a natural person) officers, directors, partners, or managers or Borrower, as applicable; Borrower's independent accountants; and any other person dealing with Borrower; (g) maintain, keep and preserve all of the properties (tangible and intangible) necessary in the proper conduct of its business in good working order and condition, ordinary wear and tear excepted; (h) obtain, preserve and maintain in good standing, as applicable, all rights, permits, licenses, authorizations, privileges and franchises necessary for the operation of Borrower's business; (i) continue to engage in an efficient and economical manner in the same business as conducted by it on the date of this Agreement; (j) maintain or cause to be maintained with insurance companies satisfactory to Lender: (i) general business insurance in amounts satisfactory to Lender covering such risks as are usually carried by persons engaged in the same or a similar business and similarly situated, (ii) workers' compensation insurance as required by law, and (iii) such additional insurance required under the Collateral Documents or otherwise required by Lender from time to time (all that insurance, the "Required Insurance"); (k) comply in all respects with all applicable laws; (l) pay before delinquency, all taxes, assessments, and governmental charges imposed upon the Borrower or its property; and (m) immediately notify Lender of (i) any lawsuit, tax claim or other dispute pending or threatened against Borrower; (ii) any substantial dispute between Borrower and any governmental authority; or (iii) any Material Adverse Effect as to Borrower.

9.    Negative Covenants. So long as any Obligations are unpaid or Lender has any commitment under this Agreement, Borrower shall not:  (a) use the proceeds of the Loans primarily for personal, family, household, or other non-business purposes; (b) if Borrower is other than a natural person, make any substantial change in the present executive or management personnel of Borrower; (c) if Borrower is other than a natural person, liquidate or dissolve Borrower's business; (d) acquire or purchase a business or its assets; (e) sell, assign, lease, transfer, or otherwise dispose of Borrower's interest in its property (tangible or intangible) other than such dispositions in the ordinary course of Borrower's business; (f) make any loans, advances or other extensions of credit to any person; or (g) create, assume or allow any Lien in, or offset or claim against Borrower's property, except (i) the Liens created under the Collateral Documents; (ii) Liens for taxes not yet due; (iii) Liens, offsets and claims disclosed in writing to Lender as of the date of this Agreement; and (iv) additional purchase money security interests in equipment acquired after the date of this Agreement.

10.    Events of Default. The occurrence of any of the following shall constitute an "Event of Default" under this Agreement:  (a) any amount required to be paid under this Agreement, the Notes or the other Loan Documents is not paid when due; (b) any term, covenant, or agreement contained in the Loan Documents is not performed or observed as required under the terms of the Loan Documents ; (c) any warranty or representation contained in the Loan Documents proves to be false or materially misleading; (d) any other Event of Default under the Loan Documents in addition to this Agreement or the Notes; (e) any default under any agreement or undertaking to which Borrower or any Guarantor is a party other than the Loan Documents, which is not cured with any applicable cure or grace period, if any; (f) any Material Adverse Effect as to Borrower or any Guarantor or Accommodation Party; (g) the death of (i) any Borrower or any Guarantor or Accommodation Party who is an individual, (ii) if Borrower or any Guarantor or Accommodation Party is a partnership, any general partner of that partnership who is an individual, or (iii) if Borrower or any Guarantor or Accommodation Party is the trustee under a trust acting in that capacity, any individual trustor under the trust; (h) an Insolvency Proceeding; or (i) the occurrence or nonoccurrence of any event or events which causes Lender to deem itself insecure.

11.    Remedies. Upon an Event of Default, Lender may, at its option: (i) without notice to Borrower, at the option of Lender, terminate or suspend any obligation of Lender to make the Loans; (ii) declare the Obligations to be due and payable, without presentment, notice of intent to accelerate or notice of acceleration, demand, protest or further

3

notice of any kind, all of which are hereby expressly waived by Borrower; and (iii) exercise all other rights and remedies afforded to Lender under the Loan Documents or by applicable law or equity. Notwithstanding the foregoing provision of this paragraph, in the event of an actual or deemed entry of an order for relief with respect to Borrower under the Federal Bankruptcy Code, any obligation of Lender to make Loans shall automatically be terminated and the Obligations shall automatically become due and payable, without presentment, demand, protest or any notice of any kind, all of which are hereby expressly waived by Borrower. Upon an Event of Default, Lender is authorized at any time and from time to time, without notice to Borrower (any such notice being hereby expressly waived by Borrower), to set off and apply any and all deposits at any time held and other indebtedness at any time owing by Lender to or for the credit of the account of Borrower against any and all the Obligations, irrespective of whether or not Lender shall have made any demand and although such Obligations may be unmatured.

12. Application of Payments. Subject to the provisions of applicable law to the contrary, (i) any funds received from or on account of Borrower, before or after an Event of Default, may be applied to amounts due under this Agreement or to such other Obligations as Lender, in its sole discretion elects; and (ii) if the amount of payments and credits to the unpaid Obligations is greater than the unpaid Obligations, then Lender shall remit the excess to Borrower or any other party reasonably determined by Lender to be entitled thereto.

13. Expenses. Lender may, at its option, pay any tax, assessment, or other governmental levy, any insurance premium or any other expense or charge required to be paid or caused to be paid by Borrower or any Guarantor or Accommodation Party (and not timely paid by Borrower or that Guarantor or Accommodation Party) (all those payments, "Lender Advancements"). Borrower shall pay on demand (a) Lender Advancements; (b) all costs and expenses incurred by Lender in connection with the preparation, execution, delivery, filing, and administration of the Loan Documents (including Legal Fees incurred in connection with the preparation of the Loan Documents and advising Lender as to its rights); (c) the cost of any credit verification reports, field examinations of Borrower's books and records, inspections of the Collateral, and appraisals and reappraisals of the Collateral required by Lender; (d) all costs and expenses incurred by Lender in connection with enforcement of the Loan Documents, or any amendment, modification, or supplement thereto, whether by negotiation, legal proceedings, or otherwise, including in the context of any Insolvency Proceeding; (e) all sums advanced or spent by Lender for the maintenance or preservation of the Collateral; (f) all other expenditures that Lender may make under the provisions of the Loan Documents or for the benefit of Borrower or any Guarantor or Accommodation Party, and not described in clauses (a) through (e) of this paragraph, including Legal Fees.

14. Definitions. "Accommodation Party" means any person other than Borrower or a Guarantor which executes a Collateral Document; "Banking Day" means a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the State of Missouri; "Borrower's Financial Information" means the financial and other information supplied or to be supplied by Borrower to Lender in connection with this Agreement; "Collateral" means all or any portion of any real or personal property required by Lender as security for all or a portion of the Obligations, and any interest therein; "Collateral Documents" means, collectively, all security agreements, deeds of trust, mortgages, assignments, pledge agreements, control agreements, and other instruments creating or perfecting a Lien in favor of Lender in the Collateral; "CPA" means a Certified Public Accountant acceptable to Lender; "GAAP" means generally accepted accounting principles in the United States; "Guaranties" means, collectively, guaranties in a form as provided by Lender from each Guarantor; "Guarantor" means a person who now or hereafter guarantees all or a portion of the Obligations; "Insolvency Proceeding" means the insolvency of Borrower or any Guarantor or Accommodation Party, the appointment of a receiver of any part of Borrower's, any Guarantor's or any Accommodation Party's property, an assignment by Borrower, any Guarantor, or any Accommodation Party for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency law by or against Borrower, any Guarantor, or any Accommodation Party; "Legal Fees" means any and all reasonable counsel, attorney, paralegal and law clerk fees and disbursements, including fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Collateral and enforcing its rights hereunder, whether with respect to retained firms, the reimbursement for the expenses of in-house staff or otherwise; "Lender" shall include any subsequent holder of the Note; "Lien" means any mortgage, deed of trust, pledge, security interest, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), or preference, priority, or other security agreement or preferential arrangement, charge, or encumbrance of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction to evidence any of the foregoing); "Loans" shall mean, unless otherwise indicated, the Line of Credit Loans; "Loan Documents" means this Agreement, the Notes, the Guaranties, the Collateral Documents, and all other agreements and instruments required by Lender for purposes of evidencing or securing the Loans, and any documents required to be delivered under any of the Loan Documents, including any and all extensions, renewals, substitutions, replacements, amendments, modifications and/or

restatements of any of the Loan Documents; "Material Adverse Effect" means any set of circumstances or events which (a) has or could reasonably be expected to have any material adverse effect as to the validity or enforceability of any material term or condition contained in any Loan Document; (b) has or could reasonably be expected to be material and adverse to the financial condition, business assets, operations, or property of the applicable person; or (c) materially impair or could reasonably be expected to materially impair the ability of the applicable person to perform the obligations under the Loan Documents; "Note" means the Line of Credit Note and any other evidence of indebtedness delivered in connection with this Agreement; "Obligations" means all obligations, indebtedness, and liabilities of Borrower now or hereafter arising pursuant to the Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of Borrower to repay the Loans; "person" shall include an individual, corporation, limited liability company, partnership, joint venture, trust, unincorporated association, governmental authority, and any other entity; "Subsidiary" means, as to Borrower, a corporation or limited liability company, or other entity owned or Controlled, directly, or indirectly through one or more intermediaries, by Borrower and; "Uniform Commercial Code" means the Uniform Commercial Code, as adopted and enacted by the State of Iowa.

15. Accounting Matters. All accounting terms not specifically defined herein shall be construed in accordance with GAAP. Borrower shall not change the manner in which either the last day of its fiscal year or the last days of the first three fiscal quarters of its fiscal years is calculated. If Borrower has any Subsidiaries, all Financial Information to be provided under this Agreement and financial calculations for purposes of this Agreement, shall be done on a consolidated basis.

16. Drafting Conventions. The words "include," "includes," and "including" are to be read as if they were followed by the phrase "without limitation"; the headings in this Agreement are provided for convenience only and do not affect its meaning; any reference to an agreement or instrument means that agreement or instrument, together with all extensions, renewals, modifications, substitutions and amendments thereof, subject to any restrictions on modification or amendment contained in that agreement or instrument; unless specified otherwise, any reference to applicable law means that law as amended or supplemented from time to time and any corresponding provisions of successor laws; all references to a time of day are references to the time in St. Louis, Missouri; if any date specified in this Agreement as a date for taking action falls on a day that is not a Banking Day, then that action may be taken on the next Banking Day; and the words "party" and "parties" refer only to a named party to this Agreement.

17. General. The Loan Documents shall not be effective until Lender receives the Loan Documents executed by all parties thereto other than Lender, and all appraisals, Financial Information and other documents and information required by Lender. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Borrower may not assign or transfer any of its rights or obligations under any Loan Document. Each disbursement by Lender and each payment by Borrower shall be evidenced by records kept by Lender. Any provision of any Loan Document which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of such Loan Document or affecting the validity or enforceability of such provision in any other jurisdiction. No amendment, modification, termination, or waiver of any provision of any Loan Document shall be effective unless the same is in writing and signed by Lender. No failure or delay on the part of Lender in exercising any right, power, or remedy under the Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise thereof or the exercise of any other right, power, or remedy under the Loan Documents. Upon the occurrence of an Event of Default, Lender may, at its option at any time, and without notice to Borrower, apply against the Obligations any property of Borrower held by Lender. The rights and remedies provided Lender in the Loan Documents are cumulative and are not exclusive of any other rights, powers, privileges, or remedies, now or hereafter existing in favor of Lender, at law or in equity or otherwise. The Loan Documents each may be executed in one or more counterparts, each of which is, for all purposes deemed an original and all such counterparts taken together, constitute one and the same document. The Loan Documents may be transmitted and/or signed by facsimile; and the effectiveness of any such documents and signatures shall, subject to applicable law, have the same force and effect as manually-signed originals and shall be binding on all parties. Upon request by Lender, Borrower shall at its sole cost and expense perform all acts which may be necessary or advisable to carry out the intent of the Loan Documents, including acts necessary or advisable to perfect any Lien provided for in the Loan Documents. Lender and its agents and representatives are authorized to discuss the affairs, finances, and accounts of Borrower with (if Borrower is other than a natural person) officers, directors, partners, or managers or Borrower, as applicable; Borrower's independent accountants; and any other person dealing with Borrower.

18. Notices. All notices, requests, and other communications provided for under the Loan Documents (each a "Notice") shall be in writing. Notices to Borrower shall be deemed to be given or made upon the earlier to occur of (a)

actual receipt by Borrower or (b) (i) if delivered by hand or by courier, upon delivery to the Borrower's Address (defined herein); or (ii) if delivered by mail, four Banking Days after deposit in the mails, addressed to Borrower's Address, certified-return receipt requested, registered, or first class postage prepaid. Notices to Lender shall be deemed given or made only when actually received by Lender at the address shown adjacent to its signature below. "Borrower's Address" shall mean Borrower's address as indicated next to Borrower's signature on this Agreement, or such other address designated by Borrower in a notice complying with the requirements of this paragraph.

19. Jurisdiction and Venue. The Loan Documents shall not be binding and effective unless and until this Agreement is accepted by Lender at its home office in St. Louis, Missouri, and all Loan Documents shall be construed under and governed by the laws of the State of Iowa, without regard to conflicts of laws provisions. BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE STATE OF IOWA FOR PURPOSES OF ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY LOAN DOCUMENT TO WHICH IT IS A PARTY OR ANY INSTRUMENT OR DOCUMENT DELIVERED THEREUNDER, WITH VENUE TO BE IN THE IOWA DISTRICT COURT FOR BLACK HAWK COUNTY, IOWA, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA.

20. WAIVER OF JURY TRIAL. BORROWER AND LENDER HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS OR ANY INSTRUMENT OR DOCUMENT DELIVERED THEREUNDER.

21. No Express or Implied Warranties. Borrower acknowledges that all products for which Borrower is obtaining financing from Lender are being purchased from one or more third parties and not from Lender. LENDER DOES NOT MAKE, HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE (AND LENDER HEREBY EXPRESSLY DISCLAIMS, ANY RESPONSIBILITY FOR) ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE TITLE OR ANY INFRINGEMENT THEREOF, COMPLIANCE WITH APPLICABLE LAW, CONDITION, DESIGN, OPERATION, MERCHANTABILITY, OR FITNESS FOR USE OR PARTICULAR PURPOSE, OF ANY PRODUCT (OR ANY PART THEREOF) PURCHASED BY BORROWER WITH FUNDS ADVANCED TO BORROWER BY LENDER, AS TO THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON NEGLIGENCE, STRICT LIABILITY IN TORT, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED WITH RESPECT TO ANY SUCH PRODUCT (OR ANY PART THEREOF), it being understood that the sole representations and warranties made to the Borrower with respect to the products purchased with financing obtained from Lender are only those, if any, made by the third party manufacturers or distributors of such products.

22. WAIVER OF PRIOR CLAIMS. BORROWER WAIVES AND RELEASES ANY AND ALL CLAIMS AGAINST LENDER, ITS PARENT, SUBSIDIARIES, AFFILIATES AND ITS MERGED PREDECESSOR, AG SERVICES OF AMERICA, INC., THE SUBSIDIARY OF SUCH PREDECESSOR, AG ACCEPTANCE CORPORATION, AND THE RESPECTIVE SUCCESSORS, ASSIGNS, PARTICIPANTS, AGENTS AND EMPLOYEES OF EACH AND ALL OF THE FOREGOING, RELATING OR PERTAINING TO OR AS A RESULT OF ANY ACT OR OMISSION WHICH HAS OCCURRED PRIOR TO THE EXECUTION OF THIS AGREEMENT, INCLUDING ALL CLAIMS OF USURY, FRAUD, DECEIT, MISREPRESENTATION, UNCONSCIONABILITY, DURESS, OR LENDER LIABILITY, ANY OTHER CLAIM IN TORT OR IN CONTRACT, OR FOR VIOLATION OF ANY LAW, RULE OR REGULATION.

23. ONE AGREEMENT. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, COLLECTIVELY: (A) REPRESENT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN LENDER AND BORROWER CONCERNING THIS CREDIT; (B) REPLACE ANY PRIOR ORAL OR WRITTEN AGREEMENTS BETWEEN LENDER AND BORROWER CONCERNING THIS CREDIT; AND (C) ARE INTENDED BY LENDER AND BORROWER AS THE FINAL, COMPLETE AND EXCLUSIVE STATEMENT OF THE TERMS AGREED TO BY THEM. IN THE EVENT OF ANY CONFLICT BETWEEN THIS AGREEMENT AND ANY OTHER AGREEMENTS REQUIRED BY THIS AGREEMENT, THIS AGREEMENT WILL PREVAIL.

24. JOINT AND SEVERAL OBLIGATIONS. IF BORROWER CONSISTS OF MORE THAN ONE PERSON, EACH OF BORROWERS IS JOINTLY AND SEVERALLY LIABLE FOR ALL OBLIGATIONS.

The parties hereto have signed and delivered this Agreement as of the day and year first above written.

Address for purposes of this Agreement:

1007 NE SHADY OAKS ROAD
MAYO, FL 32066
Telephone:       (386) 294-3544

BORROWER

KOON'S FARMS, INC., a FL corporation

By: _____
SIDNEY C. KOON (A/K/A SIDNEY CURTIS KOON,
SIDNEY KOON),
PRESIDENT

By: _____
JULIE S. KOON (A/K/A JULIE KOON),
VICE PRESIDENT

Address for purposes of this Agreement:

1007 NE SHADY OAKS ROAD
MAYO, FL 32066
Telephone:       (386) 294-3544

_____
SIDNEY C. KOON (A/K/A SIDNEY CURTIS KOON,
SIDNEY KOON)

Address for purposes of this Agreement:

1007 NE SHADY OAKS ROAD
MAYO, FL 32066
Telephone:       (386) 294-3544

_____
JULIE S. KOON (A/K/A JULIE KOON)

LENDER

RABO AGRIFINANCE, INC.

Address for purposes of this Agreement:

One CityPlace Drive, Suite 200
St. Louis, MO 63141

By: _____

Name: _____

Title: _____

7

| Dept | A.O. No. | Cif No. | Loan No. | Product Code | Customer Name | Commitment Amount |
|---|---|---|---|---|---|---|
| 70 | 883 | 3312892 | 1237987200 | 1500 | Koon's Farms Inc | $376,696.50 |

## PROMISSORY NOTE/LOAN AGREEMENT
TC300 (12/10)

LENDER:    Producers Credit Corporation
        PO Box 64949
        St. Paul, MN 55164-0949

DATE:___ April 22, 2011

LOAN AMOUNT:  $376,696.50

MATURITY DATE:  February 10, 2012

TYPE OF LOAN:    Operating Loan (Declining Balance)

STATED INTEREST RATE:  9.00___%

TYPE OF INTEREST RATE:  Indexed Variable Rate

The initial annual rate of interest is 9.0000%. The interest rate is subject to change any time during the term of the loan. The index for adjustments is the Lender's cost of funds for variable rate funding as determined by Lender. Borrowers will be notified in writing of any rate changes during the term of the loan.

**LOAN PAYMENTS:**
The principal sum due and owing hereunder, together with the interest accrued thereon, shall be due and payable on or before the Maturity Date.

**DRAFT PROGRAM:**
Loan funds may be disbursed pursuant to the Draft Program Agreement set forth herein. The Minimum Draft Amount is $0.00.

**COLLATERAL:** Payment of the loan is secured by:
All existing and future security agreements from all or any of the Borrowers (and from third parties if so intended) to the Lender. All of the covenants and agreements contained in said security instruments are made a part of this note.
Items of property as described in the Additional Provisions and any addendum hereto.

**DEFAULT ADD-ON RATE:**
When permitted by law, 6.00 percentage points will be added to the interest rate that would otherwise be in effect for this loan, if Borrowers default as explained in the Additional Provisions.

**GOVERNING LAW:**
The Promissory Note/Loan Agreement shall be governed by, construed, and enforced in accordance with the law of the State of Florida.

FOR VALUE RECEIVED, the undersigned ("Borrowers") jointly and severally promise to pay to the order of the Lender, at its office shown above, on or before the Maturity Date, the principal sum equal to the Loan Amount, together with interest thereon from dates of disbursement until paid. Borrowers grant to the Lender, as security for the payment of this loan and, if applicable, the other Obligations, as defined in the Additional Provisions, a present security interest or lien in the property described above in the Additional Provisions and in any addendum hereto.

THIS AGREEMENT INCLUDES THE PROVISIONS IN THE "PROMISSORY NOTE/LOAN AGREEMENT – ADDITIONAL PROVISIONS" AND IN ANY ADDENDUM TO NOTE/LOAN AGREEMENT. BY SIGNING BELOW YOU ARE AGREEING THAT YOU HAVE RECEIVED A COPY OF THESE FORMS.

SEE ATTACHED SIGNATURE ADDENDUM FOR SIGNATURES

Exhibit "B"

SIGNATURE ADDENDUM TO
PROMISSORY NOTE/LOAN AGREEMENT

TC/93

Date: April 22, 2011

Loan Number: 1237967200

Koon's Farms Inc

By:
Sidney C Koon, President

By:
Julie S Koon, Vice-President

Sidney C Koon, Individually

Julie S Koon, Individually

# PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 1 of 2) CROPS

**TYPE OF INTEREST RATE:** If this is a(n):

(a) **Adjustable Rate Prime Rate Based loan**, unless the promissory note indicates otherwise, the interest rate is based on an index and a margin. The initial annual rate of interest is stated in the promissory note. The index for adjustments is the prime rate reported on the tenth day of the month preceding the interest rate change date by the Wall Street Journal in its daily listing of money rates, defined therein as "the base rate on corporate loans posted by at least 75 percent of the nation's 30 largest banks." If a prime rate is not reported on the tenth day of a month, the prime rate reported on the first business day preceding the tenth day of the month will be used. If this index is no longer available, Lender will select a new index which is based upon comparable information.

(b) **Adjustable Daily Prime Rate Based loan** and the interest rate is based on an index and a margin. The initial annual rate of interest is stated in the promissory note. On any business day the interest rate shall be adjusted by adding a margin of percentage points to the index. The margin shall remain in effect for 1 day at which time Lender may change the margin, and at 1 day intervals thereafter. The index for adjustments is the prime rate for the previous business day as reported by the Wall Street Journal in its daily listing of money rates, defined therein as "the base rate on corporate loans posted by at least 75 percent of the nation's 30 largest banks." If this index is no longer available, Lender will select a new index which is based upon comparable information.

(c) **Fixed Rate loan**, the annual rate of interest is the Interest Rate in the promissory note. The interest rate is not subject to change during the term of the loan and will not be decreased or increased, except in the event of default when permitted by law.

(d) **Adjustable Rate LIBOR Based loan**, the initial annual rate of interest is equal to the Stated Interest Rate. The index for adjustments is the One Month London Interbank Offered Rate ("One Month LIBOR") reported on the tenth day of the month preceding the interest rate change date by the Wall Street Journal in its daily listing of money rates, defined therein as "the average of interbank offered rates for dollar deposits in the London market based on quotations at five major banks." If a One Month LIBOR rate is not reported on the tenth day of a month, the One Month LIBOR rate reported on the first business day preceding the tenth day of the month will be used. If this index is no longer available, Lender will select a new index which is based upon comparable information.

(e) **Adjustable Rate loan or an Adjustable Rate IT loan or an Adjustable Rate Capital RLOC**, the initial annual rate of interest is equal to the Stated Interest Rate. The interest rate is subject to change by any amount during the term of the loan, but only on the first adjustment date and on dates occurring at the end of the successive adjustment intervals thereafter and the rate will not be increased or decreased during any one such interval except in the event of default.

(f) **Variable Rate loan** the initial annual rate of interest is equal to the Stated Interest Rate. The interest rate is subject to change at any time and by any amount during the loan and will vary from time to time at the option of the Lender.

Interest may be based upon a 360- or 365-day year as the Lender may determine.

**DEFAULT RATE OF INTEREST:** When permitted by law, prior to maturity, if Borrowers default under this document, the entire unpaid principal balance of the loan, including all advancements, shall bear interest from the date of default until the default is cured or maturity of the loan is accelerated by reason of default at a rate equal to the interest rate for this loan that would otherwise be in effect during the period of default plus the Default Add-On Rate per annum (the "default rate"), and the amount of such interest in excess of interest otherwise accruing in the absence of default shall be immediately due and payable. At maturity or upon acceleration of maturity by reason of default, the entire indebtedness including all principal, interest and advancements shall bear interest until paid at the default rate in effect at the time of maturity or acceleration of maturity, as the case may be.

Borrowers shall not be required to pay and Lender shall not be permitted to collect interest in excess of the maximum permitted by applicable law. If any excess interest is provided for in the promissory note or has been collected under the promissory note, Borrowers shall not pay the interest in excess of the amount permitted by applicable law and the final amount due under the promissory note shall be adjusted so that the total interest actually paid will equal the maximum amount that may be lawfully collected.

**PURCHASES.** Borrowers' purchases pursuant to the crop input/operating loan program ("Program") shall be made only at authorized dealers participating in the Program. Each Program dealer shall notify Lender of each purchase by Borrowers of products and related services from that dealer and the tender of payment therefor by drafts, or other forms of payment authorized by Lender ("Payment Form") for use under the Program. Each such use of said Payment Form by Borrowers shall be deemed to be a request by Borrowers for an advance against the Loan Amount by Lender, in an amount equal to the amount of each such Payment Form purchase amount. Borrowers acknowledge that dealer shall retain custody and control of the drafts or other Payment Form that are for the by Borrowers solely in connection with the purchase of products and related services under the Program. Lender reserves the right to reject any Payment Form purchase notification that is not in accordance with the terms of the Program or the terms of the Promissory Note/Loan Agreement. Subject to the preceding sentence, Lender shall promptly pay to dealer the loan amount on each such Payment Form upon receipt or notification thereof. Because the primary purpose of the Program is to finance crop input products and services, it includes, unless otherwise agreed, only crop input products and related services are eligible for financing hereunder.

If Lender has approved the use of loan funds to pay parties other than a dealer for items such as rent, labor, etc., each use of a draft by Borrowers to pay such items is deemed a request by Borrowers for an advance against the Loan Amount for the amount of each such draft. The following Draft Program Agreement provisions apply to each such use of a draft by Borrowers.

**DISBURSEMENTS OF PRINCIPAL:** Disbursements of principal may be made at various times at Borrowers' request, subject to the provisions of this paragraph. Repayments of principal do not reinstate the loan commitment, and total disbursements, in the aggregate, shall not exceed the Loan Amount. The Lender may withhold further disbursements if it determines that: (a) the value of the Collateral is insufficient or if the total crop value estimated by Lender is less than that shown by the Crop Plan because Borrowers have planted different crops or different real estate from that shown in the Crop Plan; (b) loan proceeds have been used for purposes not approved by the Lender; (c) loan payments have not been made in accordance with the repayment plan contained in the loan application; or (d) an event has occurred which entitles the Lender to accelerate maturity of the loan. Borrowers acknowledge and agree that the Lender will not make any disbursements of principal after the date which is thirty (30) days prior to the Maturity Date.

Borrowers agree to pay to Lender those fees that are required by the commitment notice or letter. These fees can include: expenses associated with searches of public records for financing statements, effective financing statements, and other lien instruments; fees for filing, releasing, or amending financing statements, effective financing statements, and other lien instruments; documentary stamp taxes and other similar taxes or charges; and such other fees and expenses related to the Loan as determined by the Lender. If Borrowers do not pay the full amount of such fees at the time of the loan application or at the loan closing, Borrowers agree that the Lender can pay the fees and such payment shall be deemed to be a request by Borrowers for an advance against the Loan Amount.

**DRAFT PROGRAM AGREEMENT:** If the Draft Program is applicable to this loan, the Borrowers may draw loan funds using the draft forms furnished by the Lender, subject to the following terms and conditions:

(a) The Borrowers authorize and direct the Lender and its duly authorized agents to accept drafts made or drawn by any one of the Borrowers and to disburse loan funds accordingly, as specified in this document; however, Borrowers agree not to use drafts as payment on this or other Obligations of the Borrowers. The Borrowers may be charged a reasonable fee for the program and the cost of printing drafts.

(b) The Borrowers jointly and severally accept responsibility for all disbursements made pursuant to this authorization and direction. The Lender shall not be obligated to inquire as to whether the Borrowers have issued specific directions for any particular draft or to determine whether the Borrowers have received the benefit of the proceeds of any particular draft before honoring such draft. Drafts may be deposited directly into the bank account of any one of the Borrowers.

(c) The minimum amount for which each draft may be written is the Minimum Draft Amount. In the event that Borrowers write any draft for an amount below this minimum, the Lender may charge Borrowers a reasonable fee for each draft that is not in compliance.

(d) Drafts may not be written in excess of the undisbursed loan commitment. The Lender reserves the right to revoke all future draft privileges without notice to the Borrowers in the event of an overdraft and the right to reject drafts that are not written for purposes specified in the loan documents or pursuant to these terms and conditions. In the event that Lender chooses to honor a draft which exceeds the available loan commitment, Borrowers are liable for full repayment of the funds thus borrowed, plus interest, and Lender may charge Borrowers a reasonable overdraft fee.

(e) The Borrowers agree to immediately notify the Lender in the event one or more drafts are lost, stolen, destroyed or otherwise misused and to indemnify the Lender and hold the Lender harmless from any loss or claim if any draft is lost, stolen, forged, altered or otherwise misused if the Lender did not have notice of the same at least 24 hours prior to honoring such draft.

(f) The Borrowers may stop payment on a draft by request to the Lender. The Borrowers will be charged a reasonable fee for each stop-payment order and agree to reimburse the Lender for all damages, costs and expenses as a result of the Lender's refusal to honor such draft. The Lender shall not be liable in the event the draft is honored following a stop-payment order if such order is not received in sufficient time to permit dishonor.

(g) This authorization and direction shall be effective as to this and, with the Lender's approval, other existing and future loans to the Borrowers and shall continue in force and effect until the Lender receives written notice of revocation signed by the Borrowers, provided the privilege of using drafts may be withdrawn by the Lender and unused drafts must be surrendered to the Lender on demand.

**APPOINTMENT OF AGENT:** Each of the Borrowers hereby appoints each of the other Borrowers as agent for the purposes of this loan and, if applicable, the Obligations and agrees that loan funds and other Obligations may be disbursed to or by order of any one or more of them. This appointment shall continue until written notice of termination is received by the Lender.

**CROP PLAN:** Borrowers have prepared and furnished Lender with a Crop Plan in conjunction with their loan application. Borrowers warrant and represent to Lender that all information contained in the Crop Plan is true, accurate, and complete. If Borrowers (a) plant crops other than those identified in the Crop Plan, (b) plant crops on real estate other than that identified in the Crop Plan, or (c) plant less crops or less real estate than that identified in the Crop Plan, Borrowers must notify Lender within three (3) business days of the beginning of the planting of the crops. Lender shall be entitled to request that Borrowers sign such additional documents as Lender deems necessary to evidence and perfect its security interest based upon the Borrowers' changed circumstances. Any failure by Borrowers to timely provide such written notice or any failure by Borrowers to execute such other documents in favor of Lender shall be an event of default hereunder.

**LOAN PAYMENTS:** The Borrowers may make advance payments in any amount and at any time without penalty. Prepayments shall, at the option of the Lender, (a) be held by the Lender and then applied to installments of principal and interest next scheduled to mature in the order of maturity, (b) be immediately applied to payment of principal then outstanding, resulting in a reamortization of the remaining balance of the loan over the remaining term under the existing payment plan and in a corresponding reduction in the amount of future installments of principal and interest, or (c) be immediately applied to payment of principal then outstanding, with, if an amortized loan, a corresponding reduction in the number of future installments of principal and interest in the inverse order of maturity, thus discharging the loan at an earlier date; provided, in any event, the Lender may, at its option, first apply any such prepayments to the payment of interest accrued to the date of prepayment.

**QUARTERLY STATEMENT:** Lender will send Borrowers, for any quarter during which loan-related disbursements of principal or repayments of principal occur, a statement listing payment and disbursement transactions on the loan; provided, however, that Lender's failure to provide such statement shall not in any way affect Borrowers' obligations hereunder.

**AUTHORIZATION FOR RELEASE OF OR ACCESS TO INFORMATION:** Borrowers hereby authorize Lender to release to participating dealers the monthly statements described herein, the Loan Amount, the aggregate amount of all advances, the Crop Plan, and all other information deemed necessary or appropriate by Lender to enable the dealer to fulfill its obligations under its agreements with Lender. Borrowers hereby also authorize Lender to release to third parties to be paid by drafts as authorized herein, all information that Lender deems necessary or appropriate to carry out or facilitate such payment method. Borrowers acknowledge and agree that verification or reverification of any information either contained in the loan application or supplied to Lender in connection therewith, may be made at any time by Lender, its agents, successors, and assigns, either directly or through a credit reporting agency, from any source whether named in the loan application or otherwise provided by Borrowers to Lender.

**PERSONAL PROPERTY AND FIXTURES:** The following subsections apply to the Collateral.

(1) **Obligations and Collateral.** The Borrowers grant to the Lender as security for the payment and performance of this loan and the other Obligations a security interest in all of the Borrowers' rights, title, and interest in the Collateral, including all rights to transfer an interest in the Collateral. "Obligations" means this loan and all other loans and advances by the Lender including: (a) existing and future indebtedness, liabilities, and other obligations of the Borrowers to the Lender of any kind, absolute or contingent, due or to become due, arising out of existing or future credit granted by the Lender to the Borrowers, or any one or more of them, and all extensions and renewals thereof from time to time; and (b) all costs with interest incurred by the Lender or its agents in enforcing its rights under this document, and in all other prejudgment and post judgment enforcement, or actions taken in any bankruptcy case involving Borrowers, Collateral or other Collateral, including reasonable attorney's fees, collection costs and legal costs, ("Enforcement Costs"), when permitted by law. "Collateral" means (a) the property described on Promissory Note/Loan Agreement or on any addendum hereto; (b) all additions, accessions, replacements, and substitutions of the Collateral and property of similar type or kind now owned or hereafter acquired by the Borrowers; and (c) to the extent not included in (a) or (b) as original Collateral, all products and proceeds of the Collateral.

The Borrowers agree to deliver upon the request of the Lender such additional or corrected documents, drafts or instruments as the Lender may deem necessary at any time.

(2) **Warranties and Agreements.** The Borrowers warrant and agree that:

(a) The Borrowers are the absolute owners of the Collateral free from any encumbrances, liens, security interests, or equity interests, except for the security interest granted herein and except as disclosed by the Borrowers to the Lender in writing.

(b) The Borrowers shall: (1) care for the Collateral and not permit its value to be impaired; (2) keep the Collateral free from all encumbrances, liens, and security interests, other than those created or expressly permitted herein; (3) defend the Collateral against all claims and legal proceedings by persons other than the Lender; (4) pay and discharge when due all taxes, license fees, levies, and other charges upon the Collateral; and (5) immediately inform the Lender in writing of any change in Borrowers' address or the location of the Collateral. Loss of or damage to the Collateral shall not release the Borrowers from any of the Obligations. Upon demand, the Borrowers will provide additional collateral acceptable to the Lender.

(c) If insurance coverage was required by Lender in the Borrowers' commitment letter as a condition of loan approval, in the closing instructions, or is required by Lender at any time during the term of the loan, Borrowers agree to apply for and maintain such required insurance coverage on all items of Collateral hereunder, until the loan and all other Obligations have been paid in full. All such policies of insurance shall be issued by such carriers and in such amounts as are acceptable to Lender. Lender shall be named as an additional insured party on the policy or policies providing the required insurance coverage. Such insurance policies must provide (1) that any loss incurred thereunder shall be payable first to Lender and not to Lender and Borrowers jointly and (2) for at least ten (10) days' prior written notice to Lender of any cancellation or modification of such policies. If any insurance loss is paid by check, draft, or other instrument payable to Borrowers and Lender jointly, Borrowers hereby appoint Lender as their attorney to endorse Borrowers' names thereon and to do such other things as Lender deems advisable to negotiate any such instrument and apply the proceeds as set forth below. Lender is authorized and empowered to apply the insurance proceeds or any part thereof, at the sole discretion of Lender, to the replanting or the Collateral damaged or destroyed or to the reduction of the loan and the other Obligations, in such order of application as Lender may determine.

(d) The Borrowers shall pay all expenses, including Enforcement Costs, which are permitted to be recovered from the Borrowers by applicable law and, upon request, take any action reasonably deemed advisable by the Lender to preserve the Collateral or to establish, determine the priority of, perfect, continue, or enforce the Lender's interest in the Collateral. To the extent not prohibited by law, such recoverable expenses shall also include (a) the expenses and costs of collection and reasonable attorneys' fees if placed with an attorney for collection, including fees incurred during any relevant appeal process; (b) the expenses of retaking, holding, preparing for sale, selling, and other expenses reasonably incurred in enforcing any remedy available to Lender by reason of Borrowers' default, including reasonable attorneys' fees and other legal expenses of Lender; (c) the expenses, costs, and attorneys' fees incurred by Lender, including those incurred during any relevant appeal process, – (i) any public trustee or judicial action to foreclose any collateral, (ii) any bankruptcy proceeding, voluntary or involuntary, including efforts to modify or vacate any automatic stay or an injunction, determining adequate protection, the use of Lender's cash collateral, or relating to any plan of reorganization, (iii) any appeals and any post-judgment actions or proceedings, and (iv) the defense of any lender liability or other claims asserted by Borrowers against Lender in any forum. Borrowers shall also pay on demand, to the extent not prohibited by law, all costs, expenses, and reasonable attorneys' fees in any suit or proceeding in which Lender may be obligated to defend or protect its interests. Any advances made by Lender for these purposes shall become part of the debt evidenced by this Promissory Note/Loan Agreement, shall be immediately due and payable, and shall accrue interest thereon from the date of payment by Lender.

(e) The Lender and its agents are authorized to examine the Collateral at reasonable times.

(f) The Borrowers shall not dispose of any of the Collateral without the authorization of the Lender and, except as otherwise agreed to in writing by the Lender, shall apply the proceeds of all dispositions of the Collateral to payment of the Loan. In each disposition of Collateral by Borrowers, whether or not authorized by the Lender, the Borrowers shall dispose of the Collateral only in the name(s) of the Borrowers.

(g) If the Borrowers have provided the Lender with a list of potential buyers (List), Borrowers agree to sell the Collateral only to or through persons named on the List, which Borrowers will supplement as necessary. If Borrowers wish to sell to or through a party not on the List and if insufficient time exists to provide Lender with 10 days' prior notice, then Borrowers shall (1) give Lender immediate oral and written notice of the identity of the proposed buyer and (2) account to Lender for the proceeds of the sale within 10 days of the sale. Borrowers understand that the unauthorized disposition of Collateral constitutes a federal criminal offense, and Borrowers shall be subject to a fine which is the greater of $5,000 or 15% of the value of the benefit received from the sale, consignment or transfer to an unlisted buyer, consignee or transferee. All proceeds of any sale shall be made immediately available to Lender in a form jointly payable to Borrowers and Lender. All contracts, warehouse receipts, documents of title, accounts receivable and other non-cash proceeds shall be endorsed, assigned and delivered immediately to Lender as security for the Loan. Borrowers authorize buyers of dairy products to make checks payable to Lender only, in accordance with the terms of the dairy assignment in effect between buyer and Lender. (h) The Borrowers hereby authorize the Lender to file financing statements describing the Collateral, and amendments thereto, at such times and in such offices as the Lender, in its sole discretion, may determine. The Borrowers also authorize the Lender to file an effective financing statement describing the Collateral pursuant to 7 U.S.C. section 1631, and amendments thereto, at such times and in such offices as the Lender, in its sole discretion, may determine.

## PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 2 of 2) CROPS

Collateral includes federal or state government program entitlements or payments, the Borrowers shall execute and deliver to the Lender all assignments, transfers, and other documents required by the Lender to transfer, convey, and assign to the Lender all ...ral or state government program entitlements, payments, rights to payment whether or not earned by performance, accounts, general intangibles, and benefits.

...ms herein that are defined in the Uniform Commercial Code, as enacted in the State of Governing Law as shown in the Note ("UCC"), shall have the meanings set forth in the UCC. The meaning of a term hereunder shall automatically change on the effective date of each amendment to the definition of such term in the UCC.

(k) For each Borrower that is not an individual, the legal name of each such Borrower is as set forth in the Note or an addendum thereto. None of the Borrowers have used any trade name, assumed name, or other name except those set forth in the Note or an addendum thereto. The Borrowers shall give the Lender written notice at least 30 days before the date of (1) any change in any Borrower's name or (2) any use by any Borrower of another name.

(l) If any of the Borrowers is a Registered Organization, as that term is defined in the UCC, all information provided by each such Borrower to the Lender concerning its state or other location of organization is true, accurate, and complete. No Borrower that is a Registered Organization shall change its state or other location of organization without providing prior written notice thereof to the Lender. Any Borrower required to provide written notice to the Lender under this subsection, shall provide such notice at least 30 days before the date the Borrower takes any action to change its state or other location of organization.

(m) If any of the Borrowers is an individual or an entity that is not a Registered Organization, all information provided by the Borrowers to the Lender concerning the address of an individual Borrower's residence or the address of the chief executive office of an entity that is not a Registered Organization is true, accurate, and complete. None of the individual Borrowers shall change that address of residence without providing written notice thereof to the Lender at least 30 days before the effective date of such address change. None of the Borrowers that are entities that are not Registered Organizations shall change that address of the chief executive office without providing written notice thereof to the Lender at least 30 days before the effective date of such address change.

(n) To the extent that the Borrowers use proceeds of the Loan extended by the Lender to purchase Collateral, Borrowers' repayment of the Loan shall apply on a "first-in-first-out" basis so that the portion of the Loan used to purchase a particular item of Collateral shall be paid in the chronological order the Borrowers purchased the Collateral.

(o) During the term of the Loan and the Obligations, none of the Borrowers shall file any termination statements or other release documents as to any financing statements, effective financing statements, or other documents that the Lender has filed to perfect, or otherwise advise third parties of, its security interest in the Collateral.

(p) During the term of the Loan and the Obligations, none of the Borrowers shall file any termination statements or other release documents as to any financing statements, effective financing statements, or other documents that any third party has filed which described the Collateral.

**FULL PAYMENT OF OTHER LOANS:** If one of the conditions of the approval of this Loan was the full payment of one or more other Loans between the Borrowers and the Lender and the Borrowers do not timely pay in full such other Loan(s) as required by the Lender, the Borrowers agree that, notwithstanding the terms of the notice of approval of this Loan, the Lender shall be entitled to review, re-analyze, or re-score the Borrowers' application for this Loan to determine whether any changes in the conditions of the approval of this Loan are necessary. Such changed conditions could include the requirement by the Lender for Collateral or additional Collateral or the assumption of personal liability on this Loan by additional persons or entities.

**FINANCIAL RECORDS:** The Borrowers agree to (a) maintain complete and accurate financial books and records for Borrowers' business, (b) permit access thereto to the Lender, and (c) provide periodic financial information as requested by Lender in a form acceptable to Lender.

**PAYMENTS BY LENDER:** The Lender is authorized but not obligated to pay the following items and charge them to the loan with interest at the rate(s) then applicable to this loan: (a) amounts required to pay prior liens on the Collateral; (b) the cost of insurance carried by the Borrowers in connection with this loan; (c) appraisal and title evidence costs, recording and filing fees, and similar items; and (d) any accrued interest hereunder that is not paid when due.

**EVENTS OF DEFAULT:** Each of the following constitutes a default by Borrowers under this document: (a) the failure of Borrowers to perform any warranty or agreement contained in this document or in any instrument securing payment of this loan or related to this loan; (b) a default by Borrowers under any other promissory note executed by the Borrowers, or any one or more of them, and payable to the Lender; (c) if any statement or report furnished by the Borrowers to the Lender is false in any material respect; (d) if any Collateral is lost, stolen, substantially damaged, destroyed, or, without the Lender's prior written consent, sold or encumbered; (e) if any of the Borrowers dies, is dissolved or its existence is terminated, declares insolvency, is declared insolvent, is the subject of any proceeding under any bankruptcy or insolvency law, or is the subject of any proceeding under any state or federal farm or agricultural debt mediation law; (f) any failure by Borrowers to plant, cultivate, and harvest the crops as described in the Crop Plan in due season and in a good and farmer like manner, or to properly care for or protect any of the Collateral; (g) the Lender, in good faith, deems itself insecure or determines that the prospect of Borrowers' payment of this loan or the prospect of Borrowers' performance of this or any other instrument securing this loan or relating to it is impaired; (h) if a subordination agreement from the Farm Service Agency, Department of Agriculture, in favor of the Lender was required as a condition of the approval of the loan, default shall also exist under the loan if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M; or (i) any failure by Borrowers to satisfy, to Lender's satisfaction, each condition set out in Borrowers' loan commitment notice.

**LENDER'S REMEDIES:** Lender, in addition to other rights provided in this document or by law or agreement, may do any one or more of the following if Borrowers default under this document: (a) declare this loan and any or all other loans to Borrowers or any one or more of them immediately due and payable; (b) as to Collateral which is personal property or fixtures, exercise all the remedies of a secured party under the Uniform Commercial Code including without limitation: (1) without notice to the Borrowers or judicial process peaceably enter upon any premises where the Collateral is located, take possession of it and remove it from the premises; (2) require the Borrowers to assemble the Collateral and make it available to the Lender at a place designated by Lender which is reasonably convenient to both parties; (3) without taking possession, sell, lease or otherwise dispose of Collateral in a commercially reasonable manner at public or private sale; (4) use and occupy the Borrowers' premises to care for livestock collateral. Crops are perishable and may decline speedily in value and the Lender at Borrowers' expense may care for and harvest the crops and dispose of them at private sale; (5) require Borrowers to reimburse the Lender for Enforcement Costs incurred by the Lender. (6) After deduction of Enforcement Costs, the Lender may apply the proceeds of disposition to the Obligations in the order and amounts it elects. Upon any default, Lender may immediately terminate the financing Program hereunder; provided, however, that no such termination shall affect previous advances made by Lender prior to the effective date of such termination.

**COLLECTION RIGHTS:** At any time before or after an event of default, Lender may, and at the request of Lender the Borrowers shall, notify promptly any account debtor or obligor of any account, instrument, other right to payment, or general intangible constituting Collateral that the same has been assigned to Lender and direct such account debtor or obligor to make all future payments to Lender.

**BORROWERS' DECISION:** Borrowers realize that because of uncertainties in the farm business, results to be obtained by Borrowers hereunder in terms of market conditions or profits or losses cannot be predicted or guaranteed by Lender. Any advice or recommendation by Lender's employees or agents is solely by way of recommendation. Borrowers' implementation of any such recommendation is exclusively Borrowers' decision and Lender shall have no liability for any such decision.

**RELATIONSHIP OF PARTIES:** This agreement does not establish a joint venture, partnership, or joint enterprise of any type between Borrowers and Lender. Borrowers have the absolute obligation to make full payment under the terms and conditions of the agreement despite any losses, damage, or destruction to the farm products produced or other Collateral, and despite any financial losses or failure to realize profits from Borrowers' operations.

**WAIVER BY LENDER:** No waiver by Lender, whether express or implied, of any default shall operate as a waiver of any other default or of the same default on a future occasion. The rights granted Lender herein may be exercised cumulatively or individually without prejudice to any right which Lender may have at law or equity. Any failure by Lender to enforce or require strict adherence to any of the terms or conditions of this agreement shall not constitute a waiver by Lender of a breach of any of the other terms or conditions of this agreement.

**NO ASSIGNMENT:** This agreement is personal in nature and cannot be assigned by Borrowers without the prior written consent of Lender.

**SEVERABILITY:** If any provision(s) of this agreement are prohibited or are otherwise unenforceable, that shall not affect the enforceability or validity of any other provisions of this agreement and all other provisions shall remain valid and enforceable.

**LOAN DOCUMENTS:** Lender shall be entitled, in all cases, to retain in its files the originals of all documents evidencing the loan, even after the full payment of the loan by Borrowers.

**WAIVER:** The Borrowers and other parties to this transaction (except the Lender), and each of them, whether principal, surety, guarantor, endorser, or other party, agree to be jointly and severally bound and, further, waive demand, protest, and notice of demand, protest, or nonpayment, and agree that the liability of each shall be unconditional without regard to the liability of any other party and shall not be affected by any indulgence, extension or extensions of time, renewal, waiver, release of any party or of any Collateral, or other modifications granted or consented to by the Lender. The rights and powers granted to the Lender hereunder shall not, nor shall any provision hereof, be waived except in writing signed by the Lender, and the provisions hereof shall not be modified, limited, or waived by any prior or subsequent course of dealing between the parties or between the Borrowers and third parties or by any usage of trade. To the extent the Bank gives or has given value to the Lender in reliance hereon, either by way of loan or discount, the Borrowers hereby waive any and all other defenses or right of offset which the Borrowers or any of them may or might have against the Lender when this document is held by the Bank, its collateral custodian, or the successors or assigns of either.

**MODIFICATION: No modification of this document or any related document shall be enforceable unless it is in writing, expresses consideration and is signed by the party against whom enforcement is sought. Oral agreements or commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (the Borrowers) and us (the Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**REPORTING:** Lender, its agents, successors and assigns may report Borrowers' names and information regarding this loan and all of Borrowers' past and future loans to credit reporting agencies.

**LOAN SERVICING FEES:** During the term of the Loan, for each request by the Borrowers that the Lender take an action which involves a change to, an amendment to, or a deletion from the terms of the Loan and each such request by the Borrowers requires action by the Lender to make a determination whether to grant such a request, as for example, a request by Borrowers for a release from the security interest in favor of the Lender of all or a part of the Collateral for the Loan, Borrowers shall pay to the Lender such fee as the Lender deems appropriate to compensate it for the consideration of the Borrowers' request. If the Borrowers do not immediately pay such fee to the Lender, Borrowers agree that the Lender may increase the Loan Amount by the amount of each such fee. Borrowers further agree that (a) the payment of each such fee shall be due ten (10) days after the increase by the Lender of the Loan Amount, (b) interest as provided in the Promissory Note/Loan Agreement shall accrue on each such fee from the date of the increase of the Loan Amount, (c) default interest as provided in the Promissory Note/Loan Agreement shall accrue on each such fee that is not paid in full by Borrowers by the end of the ten-day period, and (d) each such fee and the accrued interest thereon shall be secured by the Promissory Note/Loan Agreement.

**POWER OF ATTORNEY:** In addition to any other Power of Attorney granted herein by the Borrowers to the Lender, Borrowers hereby further irrevocably appoint Lender as Borrowers' attorney-in-fact to act for Borrowers with full authority in the place and name of Borrowers to take any action and to execute any instrument which Lender may deem advisable to accomplish the purposes of the Promissory Note/Loan Agreement, including authority (a) to endorse, collect, demand, sue for, compromise, and receive any checks, drafts, warrants, instruments, documents, or monies due in connection with the Collateral; (b) to file any claims or take any action or institute any proceedings which Lender may deem desirable for the collection of any of the Collateral or to otherwise enforce the rights of Lender with respect to any of the Collateral; and (c) to establish, determine the priority of, perfect, continue as perfected, preserve, enforce, or terminate Lender's rights and interests under the Promissory Note/Loan Agreement, including, but not limited to, authority to execute on Borrowers' behalf UCC Financing Statements, Effective Financing Statements, and Farm Products Central Notice statements. Lender may charge the expenses of doing any of the foregoing to the Loan Amount or the Obligations of Borrowers to Lender. Borrowers shall pay to Lender those expenses so charged within ten (10) days after the date Lender so charges them. Interest as provided in the Promissory Note/Loan Agreement shall accrue on those expenses so charged from the date Lender so charges them and default interest as provided in the Promissory Note/Loan Agreement shall accrue thereon if the expenses are not timely paid by the Borrowers.

**PARTIES BOUND:** Each person signing the Note, other than the Lender, is a Borrower. The obligations of all Borrowers are joint and several, and all Borrowers hereby acknowledge receipt of all proceeds of the Loan. This Agreement benefits the Lender, its successors, and assigns. This Agreement shall bind the Borrowers, the Borrowers' heirs, personal representatives, successors, and assigns, and all persons and parties who become bound as a Borrower under this Agreement.

**FEES CHARGED:** Lender has authority to charge and Borrowers agree to pay any reasonable fees and costs charged by Lender to amend the terms of this Loan. Borrowers give Lender authority to advance such fees and costs and charge them to the loan. If Borrowers do not immediately repay such advance, interest at the default rate shall begin to accrue on the amount advanced. The absence of express authority in the Promissory Note/Loan Agreement to charge a specific fee or cost to Borrowers shall not be construed as a prohibition on the charging of such fees or costs.

**STATE LAW DISCLOSURES:**

(a) *The following provision applies only if the State of Governing Law is Illinois or Missouri –*

**INSURANCE:** Unless you (the Borrowers) provide us (the Lender) with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your Collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the Collateral, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

(b) *The following provision applies only if the State of Governing Law is Oregon –*

Insurance Warning. Unless you provide us with evidence of the insurance coverage as required by our loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere. You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your loan balance. If the cost is added to your loan balance, the interest rate on the underlying loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage. The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

(c) *The following clause applies only if the Collateral includes crops growing or to be grown in North Dakota –*

This security agreement covers crops now growing. This security agreement also covers future crops to be grown in the current year or any year thereafter.

| Bank | A.O. No. | CIF No. | Loan No. | Product Code | Customer Name | Commitment Amount |
|------|----------|---------|----------|--------------|---------------|-------------------|
| 70 | 803 | 3312892 | 1237987200 | 1500 | Koon's Farms Inc | $376,696.50 |

## ADDENDUM TO NOTE/LOAN AGREEMENT
TC315 (01/10)

This Addendum is a part of, and contains additional terms and conditions for, a Promissory Note/Loan Agreement ("Note") dated April 22, 2011 in the principal sum of $376,696.50, evidencing a loan extended by Producers Credit Corporation ("Lender") to the Borrowers. Unless waived in writing by the Lender, until all liabilities of the Borrowers under this loan have been paid and satisfied in full, the Borrowers covenant and agree as follows:

1.  The security interest granted by Borrowers to Lender in the Promissory Note/Loan Agreement covers the following described property:

    All of the following items whether now owned or hereafter acquired, all additions or accessions thereto, and all products and proceeds thereof:

    - All crops growing, grown, or to be grown, in 2011 and the subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops.

    - All seed, fertilizer, chemicals and petroleum, and any other crop input products.

    - All contract rights, chattel paper, documents, instruments, accounts, general intangibles, and cash and non-cash proceeds from the sale, exchange, collection, or disposition of any of the Collateral.

    - All entitlements and payments, whether in cash or in kind, arising under any governmental, whether federal or state, agricultural subsidy, deficiency, diversion, conservation, disaster, or any similar or other programs.

    - All farm and business machinery, equipment and tools.

2.  Additional Loan Conditions. Each of the following is a condition of the Loan and a failure by the Borrowers to satisfy the terms of any of these conditions shall also be an event of default under the Promissory Note/Loan Agreement.

    - UCC lien is required by Lender on all crops, crop inputs, and all proceeds thereof.

    - UCC lien is required by Lender on all farm and business machinery, equipment and tools now owned or hereafter acquired.

    - Crop insurance coverage at a level of at least the value of the crops financed with the proceeds of the Loan shall be obtained and maintained by the borrower with the Lender listed as loss payee and all crop insurance proceeds remitted to Lender if insurance assignment is available.

    - Joint checks are required, a list of all potential buyers of all crops will be provided to Lender at loan closing, unless provided on the application.

    - Loan deficiency government payment assignments if available concerning any and all crops shall be executed by the borrower to Lender.

    - Direct and Counter-cyclical and Average Crop Revenue Election government payment assignments if available concerning any and all crops shall be executed by the borrower to Lender.

    - A personal guaranty of this loan by all officers of the corporation is required.

    - Amendments (signed) to entity(ies) shall be provided to the Lender within ten (10) days after the execution thereof.

    - Post-plant crop inspection and report is to be completed by the dealer.

## AFFIRMATION OF INTENT
BGM310 (06/10)

Joint Credit

Date: April 22, 2011

As of the date we applied for Loan Number 1237987200 we intended to apply for joint credit with Producers Credit Corporation .

Signatures:

Koon's Farms Inc

By:
Sidney C Koon, President

By:
Julie S Koon, Vice-President

Sidney C Koon, Individually

Julie S Koon, Individually

## UNCONDITIONAL PERSONAL GUARANTY

TC322 (09/08)

IN CONSIDERATION of _____ Producers Credit Corporation _____ ("Lender") extending credit to:

Koon's Farms Inc.

("Borrower", whether one or more) pursuant to that certain Promissory Note/Loan Agreement dated April 22, 2011 _____ between the Lender and Borrower, a copy of which is attached hereto as Exhibit A, the undersigned, and each of them, jointly and severally, if more than one, hereby guarantees payment of that Promissory Note/Loan Agreement and any amendments thereto, with the same force and effect as if each had personally endorsed said Promissory Note/Loan Agreement, and further accepts and unconditionally guarantees performance of all terms contained therein or in any amendments thereto.

The undersigned agrees that the holder may, from time to time, extend payment of the Promissory Note, in whole or part, may accept partial payments thereon, may release or impair any collateral security therefor, may agree not to sue any party liable on said Promissory Note, may proceed against any and all guarantors therefor without first realizing upon any of the collateral or exhausting any other remedies the Lender may have against any of the initial obligors, all without releasing any liability of any of the undersigned hereunder.

To the extend not prohibited by applicable law, each of the undersigned hereby waives presentment, demand for payment by maker, notice of dishonor or protest of said Promissory Note, and all other notices and demands.

Dated: 4/26/11

By: _____

Sidney C. Koon

EXHIBIT A

| Bank | a.O. No. | CIF No. | Loan No. | Product Code | Customer Name | Commitment Amount |
|------|----------|---------|----------|--------------|---------------|-------------------|
| 70 | 863 | 3312892 | 1237987200 | 1500 | Koon's Farms Inc | $376,698.50 |

PROMISSORY NOTE/LOAN AGREEMENT
TC300 (12/10)

LENDER:     Producers Credit Corporation                              DATE: ____April 22, 2011.____
            PO Box 64949  .
            St. Paul MN 55164-0949

LOAN AMOUNT:     $376,698.50                         MATURITY DATE: ____February 10, 2012____

TYPE OF LOAN:              Operating Loan (Declining Balance)

STATED INTEREST RATE:      9.00 ___%

TYPE OF INTEREST RATE:     Indexed Variable Rate

The initial annual rate of interest is 9.0000%. The interest rate is subject to change any time during the term of the loan. The index for adjustments is the Lender's cost of funds for variable rate funding as determined by Lender. Borrowers will be notified in writing of any rate changes during the term of the loan.

OTHER COPIES

LOAN PAYMENTS:
The principal sum due and owing hereunder, together with the interest accrued thereon, shall be due and payable on or before the Maturity Date.

DRAFT PROGRAM:
Loan funds may be disbursed pursuant to the Draft Program Agreement set forth herein. The Minimum Draft Amount is $0.00.

COLLATERAL:  Payment of the loan is secured by:
All existing and future security agreements from all or any of the Borrowers (and from third parties if so intended) to the Lender. All of the covenants and agreements contained in said security instruments are made a part of this note.
Items of property as described in the Additional Provisions and any addendum hereto.

DEFAULT ADD-ON RATE:
When permitted by law, 6.00 percentage points will be added to the interest rate that would otherwise be in effect for this loan, if Borrowers default as explained in the Additional Provisions,

GOVERNING LAW:
The Promissory Note/Loan Agreement shall be governed by, construed, and enforced in accordance with the law of the State of Florida

FOR VALUE RECEIVED, the undersigned ("Borrowers") jointly and severally promise to pay to the order of the Lender, at its office shown above, on or before the Maturity Date, the principal sum equal to the Loan Amount, together with interest thereon from dates of disbursement until paid. Borrowers grant to the Lender, as security for the payment of this loan and, if applicable, the other Obligations as defined in the Additional Provisions, a present security interest or lien in the property described above in the Additional Provisions and in any addendum hereto.

THIS AGREEMENT INCLUDES THE PROVISIONS IN THE "PROMISSORY NOTE/LOAN AGREEMENT – ADDITIONAL PROVISIONS" AND IN ANY ADDENDUM TO NOTE/LOAN AGREEMENT. BY SIGNING BELOW YOU ARE AGREEING THAT YOU HAVE RECEIVED A COPY OF THESE FORMS.

SEE ATTACHED SIGNATURE ADDENDUM FOR SIGNATURES

EXHIBIT A

### SIGNATURE ADDENDUM TO
### PROMISSORY NOTE/LOAN AGREEMENT

TC499

Date: April 22, 2011

Loan Number: 1237987200

Koon's Farms Inc

By: _____
Sidney C Koon, President

By: _____
Julie S Koon, Vice-President

_____
Sidney C Koon, Individually

_____
Julie S Koon, Individually

## EXHIBIT A

### PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 1 of 3) CROPS

TYPE OF INTEREST RATE: (Fill in one):

(a) Adjustable Rate Prime Rate Based loan, unless the promissory note indicates otherwise, the interest rate is based on an Index and a margin. The Initial annual rate of interest is stated in the promissory note. The Index for adjustments is the prime rate reported on the last day of the month preceding the Interest rate change date by the Wall Street Journal in its daily rate change table for money rates, defined therein as "the base rate on corporate loans posted by at least 75 percent of the nation's 30 largest banks." If a prime rate is not reported on the last day of a month, the prime rate reported on the first business day preceding the last day of the month will be used. If this index is no longer available, Lender will select a new index which is based upon comparable information.

(b) Adjustable Daily Prime Rate Based loan and the interest rate is based on an Index and a margin. The initial annual rate of interest is stated in the promissory note. On any business day the interest rate shall be adjusted by adding a margin of percentage points to the Index. The margin shall remain in effect for 1 day at which time Lender may change the margin, and at 1 day intervals thereafter. The Index for adjustments is the prime rate for the previous business day as reported by the Wall Street Journal in its daily listing of money rates, defined therein as "the base rate on corporate loans posted by at least 75 percent of the nation's 30 largest banks." If this Index is no longer available, Lender will select a new index which is based upon comparable information.

(c) Fixed Rate loan, the annual rate of interest is the Interest Rate in the promissory note. The interest rate is not subject to change during the term of the loan and will not be decreased or increased, except in the event of default when permitted by law.

(d) Adjustable Rate LIBOR Based loan, the total annual rate of interest is equal to the Stated Interest Rate. The index for adjustments is the One Month London Interbank Offered Rate (One Month LIBOR) reported on the last day of the month preceding the interest rate change date by the Wall Street Journal in its daily listing of money rates, defined therein as "the average of interbank offered rates for dollar deposits in the London market based on quotations of five major banks." If a One Month LIBOR rate is not reported on the last day of a month, the One Month LIBOR rate reported on the first business day preceding the last day of the month will be used. If this index is no longer available, Lender will select a new index which is based upon comparable information.

(e) Adjustable Rate Operating PLOC, the initial annual rate of interest is equal to the Stated Interest Rate. The interest rate is subject to change at any time and by any amount during the term of the loan, but only on and after the first adjustment date, and the rate will not be increased or decreased prior to that date except in the event of default.

(f)    Variable Rate loan the initial annual rate of interest is equal to the Stated Interest Rate. The interest rate is subject to change at any time and by any amount during the loan and will vary from time to time at the option of the Lender. Interest may be based upon a 360- or 365-day year at the Lender may determine.

DEFAULT RATE OF INTEREST: When permitted by law, prior to maturity, if Borrower defaults under this document, the entire unpaid principal balance of the loan, including all advancements, shall bear interest from the date of default until the default is cured or maturity of the loan is accelerated by reason of default at a rate equal to the Interest rate for this loan that would otherwise be in effect during the period of default plus the Default Add-On Rate per annum (the "default rate"), and the amount of such Interest in excess of interest otherwise accruing is the absence of default shall be immediately due and payable. At maturity or upon acceleration of maturity by reason of default, the entire indebtedness including all principal, interest and advancements shall bear interest until paid at the default rate in effect at the time of maturity or acceleration of maturity, as the case may be.

PREPAYMENT: Borrower shall not be required to pay and Lender shall not be permitted to collect interest in excess of the maximum permitted by applicable law. If any excess interest is provided for in the promissory note or the promissory note, Borrower shall not pay the interest in excess of the amount permitted by applicable law and this that amount due under this agreement so adjusted so that the total interest actually paid will equal the maximum amount legally may be lawfully collected.

PURCHASES: Borrower's purchases pursuant to the crop input/operating loan program [Program] shall be made only at authorized dealers participating in the Program. Each Program shall apply only to Lender of such purchase for Borrowers of products and related services from that dealer and the transfer of payment therefor by dealer, or other forms of payment authorized by Lender [Payment Form] for use under the Program. Each such use of said Payment Form by Borrower shall be deemed to be a request by Borrowers for an advance against the Loan Amount by Lender, in an amount equal to the amount of each such Payment Form purchase amount. Borrowers acknowledges that dealer shall retain custody and control of the drafts or other Payment Form that are for use by Borrowers solely in connection with the purchase of products and related services under the Program. Lender reserves the right to reject any Payment Form purchase under the terms of the Payment Form and the terms of the promissory note/loan agreement. Subject to the preceding sentence, Lender shall promptly pay to dealer the face amount of each such Payment Form upon receipt or notification therefore. The primary purpose of the Program is to finance crop input products and services, if available, unless otherwise agreed, only crop input products and related services are eligible for financing hereunder.

If Lender has approved the use of loan funds to pay parties other than a dealer for items such as land, labor, etc., each use of a draft by Borrower to pay such items is deemed a request by Borrower for an advance against the Loan Amount for the amount of each such draft. The following Draft Program Agreement provisions apply to each such use of a draft by Borrower.

DISBURSEMENTS OF PRINCIPAL: Disbursements of principal may be made at various times at Borrower's request, subject to the provisions of this paragraph. Repayments of principal will not reinstate the loan commitment, and total disbursements, in the aggregate of principal may not exceed at any one time the Loan Amount. The Lender may withhold further disbursements if a disbursement that is taken makes the value of the Collateral insufficient or if the total crop value reflected by Lender is less than that shown by the Crop Plan because borrower was advised different crops or different real estate item that shown in the Crop Plan; (b) loan proceeds have been used for purposes not approved by the Lender; (c) loan payments have not been made in accordance with the repayment plan contained in the loan application; or (d) an event has occurred which entitles the Lender to accelerate maturity of the loan. Borrower acknowledge and agree that the Lender will not make any disbursements of principal after the date which is thirty (30) days prior to the Maturity Date.

Borrower agree to pay to Lender those fees that are required by the commitment letter of letter. These fees can include: corporate associated with searches of public records for financing statements, reflecting financing statements, and other fees associated; fees for filing, releasing, or amending financing statements, effective financing statements, and other lien instruments; documentary stamp taxes and other dealer taxes or charges; and such other fees and expenses related to the loan as determined by the Lender. If Borrowers do not pay the full amount of such fees at the time of the loan application or at the loan closing, Borrower agree that the Lender can pay the fees and such payment shall be deemed to be a request by Borrowers for an advance against the Loan Amount.

DRAFT PROGRAM AGREEMENT: If the Draft Program is applicable to this loan, the Borrower may draw loan funds using the draft funds furnished by the Lender, subject to the following kinds and conditions:

(a) The Borrowers authorize and direct the Lender and its duly authorized agents to disburse loan funds as drawn by any one of the Borrowers and to disburse loan funds accordingly, as specified in this document; however, Borrowers agree not to use drafts as payments on this or other Obligations of the Borrowers. The Borrower may be charged a reasonable fee for this program and the cost of printing drafts.

(b) The Borrowers jointly and severally accept responsibility for all disbursements made pursuant to this authorization and direction. The Lender shall not be obligated to inquire as to whether the Borrowers have issued specific directions for any particular draft or to determine whether the Borrowers have received the benefits of disbursements of any particular draft before borrowing such draft. Draft may be deposited directly into the bank account of any one of the Borrowers.

(c) The minimum amount for which each draft may be written is the Minimum Draft Amount. In the event that Borrowers write any draft for an amount below this minimum, the Lender may charge Borrower a reasonable fee for each draft that is not in compliance.

(d) Drafts may not be written in excess of the unpaid balance of the commitment. The Lender reserves the right to revoke all future draft privileges without notice to the Borrowers in the event of an overdraft and the right to reject drafts that are not written for purposes specified in the loan documents or otherwise to this terms and conditions. In the event that Lender chooses to honor a draft which exceeds the available loan commitment, Borrowers are liable for full repayment of the funds thus borrowed, plus interest, and Lender may charge Borrowers a reasonable overdraft fee.

(e) The Borrower agrees to immediately notify the Lender in the event one or more drafts are lost, stolen, destroyed or otherwise misused and to indemnify the Lender and hold the Lender harmless from any loss or claim if any draft is lost, stolen, forged, altered or otherwise misused after the Lender did not have notice of the same at least 24 hours prior to honoring such draft.

(f) The Borrowers may stop payment on a draft by request to the Lender. The Borrowers will be charged a reasonable fee for each stop payment order and agree to reimburse the Lender for all damages, costs and expenses as a result of the Lender's refusal to honor such draft. The Lender shall not be liable in the event that draft is honored following a stop payment order if such order is not received in sufficient time to permit such action.

(g) The authorization and direction shall be effective as to this and to the Lender's approval, either routing and future loans to the Borrower, and shall continue in force and effect until the Lender receives written notice of revocation signed by the Borrower, provided the privilege of using drafts may be withdrawn by the Lender and is used drafts may not be considered to the Lender on demand.

APPOINTMENT OF AGENT: Each of the Borrowers hereby appoints each of the other Borrowers as agent for the purposes of this loan and, if applicable, the Obligations and agrees that loans and other disbursements may be disbursed to or by order of any one or more of them. This appointment must continue until written notice of termination is received by the Lender.

CROP PLAN: Borrowers have prepared and furnished Lender with a Crop Plan in conjunction with their loan application. Borrowers warrant and represent to Lender that all information contained in the Crop Plan is true, accurate, and complete. If Borrowers (a) alter crops other than those identified in the Crop Plan, (b) plant crops on real estate other than that identified in the Crop Plan, or (c) plant fewer crops or less real estate than that identified in the Crop Plan, Borrowers must notify Lender within three (3) business days of the beginning of the planting of the crops. Lender shall be entitled to request that Borrower sign such additional documents as Lender deems necessary to evidence and perfect its security interest based upon the Borrower's changed circumstances. Any failure by Borrowers to timely provide such written notice or any failure by Borrowers to execute such other documents in force at Lender shall be an event of default hereunder.

LOAN PAYMENTS: The Borrowers may make advance payments in any amount and at any time without penalty. Prepayments shall, at the option of the Lender, (a) be held by the Lender and then applied to installments of principal and interest next scheduled to mature in the order of maturity, (b) be immediately applied to payment of principal then outstanding, resulting in a re-amortization of the remaining balance of the loan over the remaining same under the existing payment plan and in a corresponding reduction in the amount of future installments of principal and interest, or (c) be immediately applied to payment of principal then outstanding, with, if so provided in the loan, a corresponding reduction in the number of future installments of principal and interest in the inverse order of maturity, thus discharging the loan at an earlier date, provided, in any event, the Lender may, at its option, first apply any such prepayments to the payment of interest accrued to the date of prepayment.

QUARTERLY STATEMENT: Lender will send Borrowers, for any quarter during which loan related disbursements of principal or payments of principal occur, a statement listing payment and disbursement transactions on the loan, provided, however, that Lender's failure to provide such statement shall not in any way affect Borrowers' obligations hereunder.

AUTHORIZATION FOR RELEASE OF OR ACCESS TO INFORMATION: Borrowers hereby authorize Lender to release to participating dealers the monthly statements described herein, the Loan Amount, the aggregate amount of all advances, the Crop Plan, and all other information deemed necessary or appropriate by Lender to enable the dealer to fulfill its obligations under its agreements with Lender. Borrowers hereby also authorize Lender to release to third parties to be paid by mail or as authorized hereof, of information that Lender deems necessary or appropriate to carry out or facilitate such payment method. Borrowers acknowledge and agree that verification or reverification of any information either contained in the loan application or supplied to Lender in connection therewith, may be made at any time by Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named or not named in the loan application or otherwise provided by Borrowers to Lender.

TC00500

# EXHIBIT A

## PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 2 of 3) CROPS

# EXHIBIT A

## PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 3 of 3) CROPS

one or more of them immediately due and payable, (b) as to Collateral which is personal property or fixtures, exercise all the remedies of a secured party under the Uniform Commercial Code including without limitation (1) without notice to the Borrowers or judicial process peaceably enter upon any premises where the Collateral is located, take possession of and remove it from the premises; (2) require the Borrowers to assemble the Collateral and make it available to the Lender at a place designated by Lender which is reasonably convenient to both parties; (3) without using process, sell, lease or otherwise dispose of Collateral in a commercially reasonable manner at public or private sale; (4) use and occupy the Borrowers' premises to care for livestock collateral. Crops are perishable and may decline speedily in value and the Lender at Borrowers' expense may care for and harvest the crops and dispose of them at private sale; (5) require Borrowers to reimburse the Lender for Enforcement Costs incurred by the Lender. (6) after deduction of Enforcement Costs, the Lender may apply the proceeds of disposition to the Obligations in the order and amounts it elects. Upon any default, Lender may immediately terminate the financing Program hereunder, provided, however, that no such termination shall affect previous advances made by Lender prior to the effective date of such termination.

COLLECTION RIGHTS: At any time before or after an event of default, Lender may, and at the request of Lender the Borrowers shall, notify promptly any account debtor or obligor of any account, instrument, other right to payment, or general intangible constituting Collateral that the same has been assigned to Lender and direct such account debtor or obligor to make all future payments to Lender.

BORROWERS' DECISION: Borrowers realize that because of uncertainties in the farm business, results in the obtained by Borrowers hereunder by reason of market conditions or profits or losses cannot be predicted or guaranteed by Lender. Any advice or recommendation by Lender's employees or agents is solely by way of recommendation. Borrowers' implementation of any such recommendation is exclusively Borrowers' decision and Lender shall have no liability for any such decision.

RELATIONSHIP OF PARTIES: This agreement does not establish a joint venture, partnership, or joint enterprise of any type between Borrowers and Lender. Borrowers have the absolute obligation to make full payment under the terms and conditions of this agreement despite any losses, damage, or destruction to the farm products produced or sold or Collateral, and despite any financial losses or failure to realize profits from Borrowers' operations.

WAIVER BY LENDER: No waiver by Lender, whether express or implied, of any default shall operate as a waiver of any other default or of the same default on a future occasion. The rights granted Lender herein may be exercised cumulatively or individually without prejudice to any right which Lender may have at law or equity. Any failure by Lender to enforce or insist in strict adherence to any of the terms or conditions of this agreement shall not constitute a waiver by Lender of a breach of any of the other terms or conditions of this agreement.

NO ASSIGNMENT: This agreement is personal in nature and cannot be assigned by Borrowers without the prior written consent of Lender.

SEVERABILITY: If any provision(s) of this agreement are prohibited or are otherwise unenforceable, that shall not affect the enforceability or validity of any other provisions of this agreement and all other provisions shall remain valid and enforceable.

LOAN DOCUMENTS: Lender shall be entitled, in all cases, to return to it first the originals of all documents evidencing the loan, may after the full payment of the loan by Borrowers.

WAIVER: The Borrowers and other parties to this transaction (except the Lender), and each of them, whether principal, surety, guarantor, endorser, or other party, agree to be jointly and severally bound and, to the extent allowed by law, hereby waive demand, protest, and notice of demand, protest, or nonpayment, and agree that the validity of each shall be unconditional without regard to the liability of any other party and shall not be affected by any indulgence, alteration or extensions of any agreement, waiver, release of any party or of any Collateral, or other modifications granted or consented to by the Lender. The rights and powers granted to the Lender hereunder shall not, nor shall any provision hereof, be waived except in writing signed by the Lender, and the provisions hereof shall not be so modified, limited, or waived by any prior or subsequent course of dealing between the parties or between the Borrowers and third parties or by any usage of trade. To the extent the Bank gives or has given notice to the Lender in advance hereof, whether by way of loan or discount, the Borrowers hereby waive any and all other defenses or right of offset which the Borrowers or any of them may or might have against the Lender when this document is held by the Bank, its collateral custodian, or the successors or assigns of either.

MODIFICATION: No modification of this document or any related document shall be enforceable unless it is in writing, expresses consideration and is signed by the party against whom enforcement is sought. Oral agreements or commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (the Borrowers) and us (the Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

REPORTING: Lender, its agents, successors and assigns may report Borrowers' names and information regarding this loan and all of Borrowers' past and future loans to credit reporting agencies.

LOAN SERVICING FEES: During the term of the Loan, for each request by the Borrowers that the Lender take an action which involves a change to, or amendment to, or a deviation from the terms of the Loan and each such request by the Borrowers requires action by the Lender to make a determination whether to grant such a request, as for example, a request by Borrowers for a release from the security interest in favor of the Lender of all or a part of the Collateral for the Loan, Borrowers shall pay to the Lender such fee as the Lender deems appropriate to compensate it for the consideration of the Borrowers' request. If the Borrowers do not immediately pay such fee to the Lender, then Borrowers agree that the Lender may increase the Loan Amount by the amount of each such fee. Borrowers further agree that (a) the payment of each such fee shall be free by the Lender of the Loan Amount, (b) interest shall accrue on each such fee that is not paid to the Lender by the end of the business day period, and (c) each such fee and the accrued interest thereon shall be secured by the Promissory Note/Loan Agreement.

POWER OF ATTORNEY: In addition to any other Power of Attorney granted herein by the Borrowers to the Lender, Borrowers hereby further irrevocably appoint Lender as Borrowers' attorney-in-fact to act for Borrowers with full authority in the place and name of Borrowers to take any action and to execute any instrument which Lender may deem advisable to accomplish the purposes of this Promissory Note/Loan Agreement, including authority (a) to endorse, collect, demand, sue for, compromise, and receive any checks, drafts, warrants, instruments, documents, or monies due or owed to the Collateral; (b) to fix any claims or take any action or institute any proceedings which Lender may deem desirable for the collection of any of the Collateral or to otherwise enforce the rights of Lender with respect to any of the Collateral; and (c) to publish, determine the priority of, perfect, continue as perfected, preserve, enforce or terminate Lender's rights and interest under the Promissory Note/Loan Agreement, including, but not limited to, authority to execute on Borrowers' behalf UCC Financing Statements, Effective Financing Statements, and Farm Products Central Notice statements. Lender may charge the expenses of doing any of the foregoing to the Loan Amount or the Obligations of Borrowers to Lender. Borrowers shall pay to Lender those expenses to be charged which ten (10) days after the date Lender so charges them. Interest as provided in the Promissory Note/Loan Agreement shall accrue on those amounts so charged from the date Lender so charges them and Lender shall be entitled in the Promissory Note/Loan Agreement shall accrue immediately and by the Borrowers.

PARTIES BOUND: Each person signing the Note shall join the Lender, is a Borrower. The obligations of all Borrowers are joint and several, and all Borrowers hereby acknowledge receipt of all proceeds of the Loan. This Agreement benefits the Lender, its successors, and assigns. This Agreement shall bind the Borrowers, the Borrowers' heirs, personal representatives, successors, and assigns, and all persons and parties who become bound as a Borrower under this Agreement.

FEES CHARGED: Lender has authority to charge and Borrowers agree to pay any reasonable fees and costs charged by Lender to amend the terms of the Loan. Borrowers give Lender authority to advance such fees and costs and charge them to the loan. If Borrowers do not immediately repay any advance, interest at the default rate shall begin to accrue on the amount advanced. The absence of express authority in the Promissory Note/Loan Agreement to charge a specific fee or cost to Borrowers shall not be construed as a prohibition on the authority of Lender to charge such fees or costs.

STATE LAW DISCLOSURES:

(a) The following provision applies only if the State of Operation Law is Illinois or Maryland –

INSURANCE: Unless you (the Borrowers) provide us (the Lender) with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the Collateral, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

(b) The following provision applies only if the State of Operation Law is Oregon –

Insurance Warning. Unless you provide us with evidence of the insurance coverage as required by our loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere. You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your loan balance. If the cost is added to your loan balance, the interest rate on the underlying loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage. The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

(c) The following clause applies only if the Collateral includes crops growing or to be grown in North Dakota –

This security agreement covers crops now growing. This security agreement also covers future crops to be grown in the current year or any year thereafter.

TC00503

EXHIBIT A

| Bank | B.O. No. | CIF No. | Loan No. | Product Code | Customer Name | Commitment Amount |
|------|----------|---------|----------|--------------|---------------|-------------------|
| 70 | 883 | 3312892 | 1237987200 | 1500 | Koon's Farms Inc | $376,696.50 |

## ADDENDUM TO NOTE/LOAN AGREEMENT
TCS15 (01/10)

This Addendum is a part of, and contains additional terms and conditions for, a Promissory Note/Loan Agreement ("Note") dated April 22, 2011 in the principal sum of $376,696.50, evidencing a loan extended by Producers Credit Corporation ("Lender") to the Borrowers. Unless waived in writing by the Lender, until all liabilities of the Borrowers under this loan have been paid and satisfied in full, the Borrowers covenant and agree as follows:

1.  The security interest granted by Borrowers to Lender in the Promissory Note/Loan Agreement covers the following described property:

    All of the following items whether now owned or hereafter acquired, all additions or accessions thereto, and all products and proceeds thereof:

    · All crops growing, grown, or to be grown in 2011 and the subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops.

    · All seed, fertilizer, chemicals and petroleum, and any other crop input products.

    · All contract rights, chattel paper, documents, instruments, accounts, general intangibles, and cash and non-cash proceeds from the sale, exchange, collection, or disposition of any of the Collateral.

    · All entitlements and payments, whether in cash or in kind, arising under any governmental, whether federal or state, agricultural subsidy, deficiency, diversion, conservation, disaster, or any similar or other programs.

    · All farm and business machinery, equipment and tools.

2.  Additional Loan Conditions. Each of the following is a condition of the Loan and a failure by the Borrowers to satisfy the terms of any of these conditions shall also be an event of default under the Promissory Note/Loan Agreement.

    · UCC lien is required by Lender on all crops, crop inputs, and all proceeds thereof.

    · UCC lien is required by Lender on all farm and business machinery, equipment and tools now owned or hereafter acquired.

    · Crop insurance coverage at a level of at least the value of the crops financed with the proceeds of the Loan shall be obtained and maintained by the borrower with the Lender listed as loss payee and all crop insurance proceeds remitted to Lender if insurance assignment is available.

    · Joint checks are required; a list of all potential buyers of all crops will be provided to Lender at loan closing, unless provided on the application.

    · Loan deficiency government payment assignments if available concerning any and all crops shall be executed by the borrower to Lender.

    · Direct and Counter-cyclical and Average Crop Revenue Election government payment assignments if available concerning any and all crops shall be executed by the borrower to Lender.

    · A personal guaranty of this loan by all officers of the corporation is required.

    · Amendments (signed) to entity(ies) shall be provided to the Lender within ten (10) days after the execution thereof.

    · Post-plant crop inspection and report is to be completed by the dealer.

## UNCONDITIONAL PERSONAL GUARANTY

FC322 (08/08)

IN CONSIDERATION of _____ Producers Credit Corporation _____ ("Lender") extending credit to:
Koon's Farms Inc.

("Borrower", whether one or more) pursuant to that certain Promissory Note/Loan Agreement dated April 22, 2011 between the Lender and Borrower, a copy of which is attached hereto as Exhibit A, the undersigned, and each of them, jointly and severally, if more than one, hereby guarantees payment of that Promissory Note/Loan Agreement and any amendments thereto, with the same force and effect as if each had personally endorsed said Promissory Note/Loan Agreement, and further accepts and unconditionally guarantees performance of all terms contained therein or in any amendments thereto.

The undersigned agrees that the holder may, from time to time, extend payment of the Promissory Note, in whole or part, may accept partial payments thereon, may release or impair any collateral security therefor, may agree not to sue any party liable on said Promissory Note, may proceed against any and all guarantors therefor without first realizing upon any of the collateral or exhausting any other remedies the Lender may have against any of the initial obligors, all without releasing any liability of any of the undersigned hereunder

To the extend not prohibited by applicable law, each of the undersigned hereby waives presentment, demand for payment by maker, notice of dishonor or protest of said Promissory Note, and all other notices and demands.

Dated: 4-26-11

Julie S. Koon

EXHIBIT A

| bank | B.O. No. | CIF No. | Loan No. | Product Code | Customer Name | Commitment Amount |
|---|---|---|---|---|---|---|
| 70 | 003 | 3312862 | 1237087200 | 1500 | Koon's Farms Inc | $376,696.50 |

### PROMISSORY NOTE/LOAN AGREEMENT
TC300 (12/10)

LENDER:    Producers Credit Corporation                        DATE: _____ April 22, 2011
                         PO Box 64949
                         St. Paul, MN 55164-0949

LOAN AMOUNT:    $376,696.50                            MATURITY DATE: _____ February 10, 2012

TYPE OF LOAN:      Operating Loan (Declining Balance)

STATED INTEREST RATE:    9.00    %

TYPE OF INTEREST RATE:    Indexed Variable Rate

The initial annual rate of interest is 9.0000%. The interest rate is subject to change any time during the term of the loan. The index for adjustments is the Lender's cost of funds for variable rate funding as determined by Lender. Borrowers will be notified in writing of any rate changes during the term of the loan.

LOAN PAYMENTS:
The principal sum due and owing hereunder, together with the interest accrued thereon, shall be due and payable on or before the Maturity Date.

DRAFT PROGRAM:
Loan funds may be disbursed pursuant to the Draft Program Agreement set forth herein. The Minimum Draft Amount is $0.00.

COLLATERAL: Payment of the loan is secured by:
All existing and future security agreements from all or any of the Borrowers (and from third parties if so intended) to the Lender. All of the covenants and agreements contained in said security instruments are made a part of this note.
Items of property as described in the Additional Provisions and any addendum hereto.

DEFAULT ADD-ON RATE:
When permitted by law, 6.00 percentage points will be added to the interest rate that would otherwise be in effect for this loan. If Borrowers default as explained in the Additional Provisions.

GOVERNING LAW:
The Promissory Note/Loan Agreement shall be governed by, construed, and enforced in accordance with the law of the State of Florida.

FOR VALUE RECEIVED, the undersigned ("Borrowers") jointly and severally promise to pay to the order of the Lender, at its office shown above, on or before the Maturity Date, the principal sum equal to the Loan Amount, together with interest thereon from dates of disbursement until paid. Borrowers grant to the Lender, as security for the payment of this loan and, if applicable, the other Obligations, as defined in the Additional Provisions, a present security interest or lien in the property described above in the Additional Provisions and in any addendum hereto.

THIS AGREEMENT INCLUDES THE PROVISIONS IN THE "PROMISSORY NOTE/LOAN AGREEMENT – ADDITIONAL PROVISIONS" AND IN ANY ADDENDUM TO NOTE/LOAN AGREEMENT. BY SIGNING BELOW YOU ARE AGREEING THAT YOU HAVE RECEIVED A COPY OF THESE FORMS.

SEE ATTACHED SIGNATURE ADDENDUM FOR SIGNATURES

EXHIBIT A

SIGNATURE ADDENDUM TO
PROMISSORY NOTE/LOAN AGREEMENT

TC499

Date: April 22, 2011

Loan Number: 1237987200

Koon's Farms Inc

By:
Sidney C Koon, President

By:
Julie S Koon, Vice-President

Sidney C Koon, Individually

Julie S Koon, Individually

## EXHIBIT A

### PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 1 of 3) CROPS

# EXHIBIT A

## PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 2 of 3) CROPS

PERSONAL PROPERTY AND FIXTURES: The following subsections apply to the Collateral:

(1)Obligations and Collateral. The Borrowers grant to the Lender as security for the payment and performance of this loan and the other Obligations a security interest in all of the Borrowers' rights, title, and interest in the Collateral, including all rights to transfer an interest in the Collateral. "Obligations" means this loan and all other loans and advances by the Lender including: (a) existing and future indebtedness, liabilities, and other obligations of the Borrowers to the Lender of any kind, absolute or contingent, due or to become due, arising out of existing or future credit granted by the Lender to the Borrowers, or any one or more of them, and all extensions and renewals thereof from time to time; and (b) all costs with interest incurred by the Lender or its agents in enforcing its rights under this document, and in all other prejudgment and post judgment enforcement, or actions taken in any bankruptcy case involving Borrowers, Collateral or other Collateral, including reasonable attorney's fees, collection costs and legal costs ("Enforcement Costs"), when permitted by law. "Collateral" means (a) the property described on Promissory Note/Loan Agreement or on any addendum hereto; (b) all additions, accessions, replacements, and substitutions of the Collateral and property of similar type or kind now owned or hereafter acquired by the Borrowers; and (c) to the extent not included in (a) or (b) as original Collateral, all products and proceeds of the Collateral.

The Borrowers agree to deliver upon the request of the Lender such additional or corrected documents, drafts or instruments as the Lender may deem necessary at any time.

(2) Warranties and Agreements. The Borrowers warrant and agree that:

(a) The Borrowers are the absolute owners of the Collateral free from any encumbrances, liens, security interests, or equity interests, except for the security interest granted herein and except as disclosed by the Borrowers to the Lender in writing.

(b) The Borrowers shall: (1) care for the Collateral and not permit its value to be impaired; (2) keep the Collateral free from all encumbrances, liens, and security interests, other than those created or expressly permitted herein; (3) defend the Collateral against all claims and legal proceedings by persons other than the Lender; (4) pay and discharge when due all taxes, license fees, levies, and other charges upon the Collateral; and (5) immediately inform the Lender in writing of any change in Borrowers' address or the location of the Collateral. Loss of or damage to the Collateral shall not release the Borrowers from any of the Obligations. Upon demand, the Borrowers will provide additional collateral acceptable to the Lender.

(c) If insurance coverage was required by Lender in the Borrowers' commitment letter as a condition of loan approval, in the closing instructions, or is required by Lender at any time during the term of the loan, Borrowers agree to apply for and maintain such required insurance coverage on all items of Collateral hereunder, until the loan and all other Obligations have been paid in full. All such policies of insurance shall be issued by such carriers and in such amounts as are acceptable to Lender. Lender shall be named as an additional insured party on the policy or policies providing the required insurance coverage. Such insurance policies must provide (1) that any loss incurred thereunder shall be payable first to Lender and not to Lender and Borrowers jointly and (2) for at least ten (10) days' prior written notice to Lender of any cancellation or modification of such policies. If any insurance loss is paid by check, draft, or other instrument payable to Borrowers and Lender jointly, Borrowers hereby appoint Lender as their attorney to endorse Borrowers' names thereon and to do such other things as Lender deems advisable to negotiate any such instrument and apply the proceeds as set forth below. Lender is authorized and empowered to apply the insurance proceeds or any part thereof, at the sole discretion of Lender, to the replacing of the Collateral damaged or destroyed or to the reduction of the loan and the other Obligations, in such order of application as Lender may determine.

(d) The Borrowers shall pay all expenses, including Enforcement Costs, which are permitted to be recovered from the Borrowers by applicable law and, upon request, take any action reasonably deemed advisable by the Lender to preserve the Collateral or to establish, determine the priority of, perfect, continue, or enforce the Lender's interest in the Collateral. To the extent not prohibited by law, such recoverable expenses shall also include (a) the expenses and costs of collection and reasonable attorneys' fees if placed with an attorney for collection, including fees incurred during any relevant appeal process, (b) the expenses of retaking, holding, preparing for sale, selling, and other expenses necessarily incurred in enforcing any remedy available to Lender by reason of Borrowers' default, including reasonable attorneys' fees and other legal expenses of Lender; (c) the expenses, costs, and attorneys' fees incurred by Lender, including those incurred during any relevant appeal process — (i) any public hearing or judicial action to foreclose any collateral, (ii) any bankruptcy proceeding, voluntary or involuntary, including efforts to modify or vacate any automatic stay or an injunction, determining adequate protection, the use of Lender's cash collateral, or relating to any plan of reorganization, (iii) any appeals and any post-judgment actions or proceedings, and (iv) the defense of any lender liability or other claims asserted by Borrowers against Lender in any forum. Borrowers shall also pay on demand, to the extent not prohibited by law, all costs, expenses, and reasonable attorneys' fees in any suit or proceeding in which Lender may be obligated to defend or protect its interests. Any advances made by Lender for these purposes shall become part of the debt evidenced by this Promissory Note/Loan Agreement, shall be immediately due and payable, and shall accrue interest thereon from the date of payment by Lender.

(e) The Lender and its agents are authorized to examine the Collateral at reasonable times.

(f) The Borrowers shall not dispose of any of the Collateral without the authorization of the Lender and, except as otherwise agreed to in writing by the Lender, shall apply the proceeds of all dispositions of the Collateral to payment of this Loan. In each disposition of Collateral by Borrowers, whether or not authorized by the Lender, the Borrowers shall dispose of the Collateral only in the name(s) of the Borrowers.

(g) If the Borrowers have provided the Lender with a list of potential buyers (List), Borrowers agree to sell the Collateral only to or through persons named on the List, which Borrowers will supplement as necessary. If Borrowers wish to sell to or through a party not on the List and insufficient time exists to provide Lender with 10 days' prior notice, then Borrowers shall: (1) give Lender immediate oral and written notice of the identity of the proposed buyer and (2) account to Lender for the proceeds of the sale within 10 days of the sale. Borrowers understand that the unauthorized disposition of Collateral constitutes a federal criminal offense, and Borrowers shall be subject to a fine which is the greater of $5,000 or 15% of the value of the benefit received from the sale, consignment or transfer to an unlisted buyer, consignee or transferee. All proceeds of any sale shall be made immediately available to Lender in a form jointly payable to Borrowers and Lender. All contracts, warehouse receipts, documents of title, accounts receivable and other non-cash proceeds shall be endorsed, assigned and delivered immediately to Lender as security for the Loan. Borrowers authorize buyers of dairy products to make checks payable to Lender only in accordance with the terms of the dairy assignment in effect between buyer and Lender.(h) The Borrowers hereby authorize the Lender to file financing statements describing the Collateral, and amendments thereto, at such times and in such offices as the Lender, in its sole discretion, may determine. The Borrowers also authorize the Lender to file all effective financing statements describing the Collateral pursuant to 7 U.S.C. section 1631, and amendments thereto, at such times and in such offices as the Lender, in its sole discretion, may determine.

(i) If the Collateral includes federal or state government program entitlements or payments, the Borrowers shall execute and deliver to the Lender all assignments, transfers, and other documents required by the Lender to transfer, convey, and assign to the Lender all such federal or state government program entitlements, payments, rights to payment whether or not earned by performance, accounts, general intangibles, and benefits.

(j) All terms herein that are defined in the Uniform Commercial Code, as enacted in the State of Governing Law as shown in the Note ("UCC"), shall have the meanings set forth in the UCC. The meaning of a term hereunder shall automatically change on the effective date of each amendment to the definition of such term in the UCC.

(k) For each Borrower that is not an individual, the legal name of each such Borrower is as set forth in the Note or an addendum thereto. None of the Borrowers have used any trade name, assumed name, or other name except those set forth in the Note or an addendum thereto. The Borrowers shall give the Lender written notice at least 30 days before the date of (1) any change in a Borrower's name or (2) any use by any Borrower of another name.

(l) If any of the Borrowers is a Registered Organization, as that term is defined in the UCC, all information provided by all such Borrowers to the Lender concerning its state or other location of organization is true, accurate, and complete. No Borrower that is a Registered Organization shall change its state or other location of organization without providing prior written notice thereof to the Lender. Any Borrower required to provide written notice to the Lender under this subsection, shall provide such notice at least 30 days before the date the Borrower takes any action to change its state or other location of organization.

(m) If any of the Borrowers is an individual or an entity that is not a Registered Organization, all information provided by the Borrowers to the Lender concerning the address of an individual Borrower's residence or the address of the chief executive office of an entity that is not a Registered Organization is true, accurate, and complete. None of the individual Borrowers shall change that address of residence without providing written notice thereof to the Lender at least 10 days before the effective date of such address change. None of the Borrowers that are entities that are not Registered Organizations shall change that address of the chief executive office without providing written notice thereof to the Lender at least 30 days before the effective date of such address change.

(n) To the extent that the Borrowers use proceeds of the Loan extended by the Lender to purchase Collateral, Borrowers' repayment of the Loan shall apply on a "first-in first-out" basis so that the portion of the Loan used to purchase a particular item of Collateral shall be paid in the chronological order the Borrowers purchased the Collateral.

(o) During the term of the Loan and the Obligations, none of the Borrowers shall file any termination statements or other release documents as to any financing statements, effective financing statements, or other documents that the Lender has filed to perfect, or otherwise advise third parties of, its security interest in the Collateral.

(p) During the term of the Loan and the Obligations, none of the Borrowers shall file any termination statements or other release documents as to any financing statements, effective financing statements, or other documents that any third party has filed which describes the Collateral.

FULL PAYMENT OF OTHER LOANS: If one of the conditions of the approval of this Loan was (1) full payment of one or more other Loans between the Borrowers and the Lender and the Borrowers do not timely pay in full such other Loan(s) as required by the Lender, the Borrowers agree that, notwithstanding the terms of the notice of approval of this Loan, the Lender shall be entitled to review, re-analyze, or re-score the Borrowers' application for this Loan to determine whether any changes in the conditions of the approval of this Loan are necessary. Such changed conditions could include the requirement by the Lender for Collateral or additional Collateral or the assumption of personal liability on this Loan by additional persons or entities.

FINANCIAL RECORDS: The Borrowers agree to (a) maintain complete and accurate financial books and records for Borrowers' business, (b) permit access thereto to the Lender, and (c) provide periodic financial information as requested by Lender in a form acceptable to Lender.

PAYMENTS BY LENDER: The Lender is authorized but not obligated to pay the following items and charge them to the loan with interest at the rate(s) then applicable to this loan: (a) amounts required to pay prior liens on the Collateral, (b) the cost of insurance called by the Borrowers in connection with this loan; (c) appraisal and title evidence costs, recording and filing fees, and similar items; and (d) any accrued interest hereunder that is not paid when due.

EVENTS OF DEFAULT: Each of the following constitutes a default by Borrowers under this document: (a) the failure of Borrowers to perform any warranty or agreement contained in this document or in any instrument securing payment of this loan or related to this loan; (b) a default by Borrowers under any other promissory note executed by the Borrowers, or any one or more of them, and payable to the Lender; (c) if any statement or report furnished by the Borrowers to the Lender is false in any material respect; (d) if any Collateral is lost, stolen, substantially damaged, destroyed, or, without the Lender's prior written consent, sold or encumbered; (e) if any of the Borrowers dies, is dissolved or its existence is terminated, declares insolvency, is declared insolvent, is the subject of any proceeding under any bankruptcy or insolvency law, or is the subject of any proceeding under any state or federal farm or agricultural debt mediation law; (f) any failure by Borrowers to plant, cultivate, and harvest the crops as described in the Crop Plan in due season and in a good and farmer like manner, or to properly care for or protect any of the Collateral; (g) the Lender, in good faith, deems itself insecure or determines that the prospect of Borrowers' payment of this loan or the prospect of Borrowers' performance of this or any other instrument securing this loan or relating to it is impaired; (h) if a subordination agreement from the Farm Services Agency, Department of Agriculture, in favor of the Lender was required as a condition of the approval of the loan, default shall also exist under the loan if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M; or (i) any failure by Borrowers to satisfy, to Lender's satisfaction, each condition set out in Borrowers' loan commitment notice.

LENDER'S REMEDIES: Lender, in addition to other rights provided in this document or by law or agreement, may do any one or more of the following if Borrowers default under this document: (a) declare this loan and any or all other loans to Borrowers or any

TC00503

EXHIBIT A

PROMISSORY NOTE/LOAN AGREEMENT ADDITIONAL PROVISIONS (Page 3 of 3) CROPS

one or more of them immediately due and payable; (b) as to Collateral which is personal property or fixtures, exercise all the remedies of a secured party under the Uniform Commercial Code including without limitation (1) without notice to the Borrowers or judicial process personally enter upon any premises where the Collateral is located, take possession of same and remove it from the premises; (2) require the Borrowers to assemble the Collateral and make it available to the Lender at a place designated by Lender which is reasonably convenient to both parties; (3) without taking possession, sell, lease or otherwise dispose of Collateral in a commercially reasonable manner at public or private sale; (4) use and occupy the Borrowers' premises to care for, harvest Collateral. Crops are perishable and may decline rapidly in value and the Lender or Borrowers' expense may care for and harvest the crops and dispose of them and disburse the proceeds to reimburse the Lender for Collateral Costs incurred by the Lender. (5) After deduction of Enforcement Costs, the Lender may apply the proceeds of disposition to the Obligations in the order and amount it elects. Upon any default, Lender may immediately terminate its Financing Program hereunder; provided, however, that no such termination shall affect any/such previous advances made by Lender prior to the effective date of such termination.

COLLECTION RIGHTS: At any time, before or after an event of default, Lender may, and at the request of Lender the Borrowers shall, notify promptly any account debtor to collect of any account, instrument, other right to payment, or general intangible constituting Collateral that the same has been assigned to Lender and direct such account debtor to oblige to make all future payments to Lender.

BORROWERS' DISCLOSURE: Borrowers realize that because of uncertainties in the farm business, results to be obtained by Borrowers hereunder in terms of market conditions or profits or losses cannot be predicted or guaranteed by Lender. Any advice or recommendation by Lender's employees or agents is solely by way of recommendation. Borrowers' implementation of any such recommendation is exclusively Borrowers' decision and Lender shall have no liability for any such decision.

RELATIONSHIP OF PARTIES: This agreement does not establish a joint venture, or other enterprise of any type between Borrowers and Lender. Borrowers have the absolute obligation to make all payment under the terms and conditions of this agreement despite any losses, damage, or destruction to the farm products produced or other Collateral, and despite any financial losses or failure in such crops from Borrowers' operations.

WAIVER BY LENDER: No waiver by Lender, whether express or implied, of any default shall operate as a waiver of any other default or of the same default on a future occasion. The rights granted Lender herein may be exercised cumulatively or individually without prejudice to any right which Lender may have at law or equity. Any failure by Lender to enforce or require strict observance by any of the terms or conditions of this agreement shall not constitute a waiver by Lender of a breach of any of the other terms or conditions of this agreement.

NO ASSIGNMENT: This agreement is personal in nature and cannot be assigned by Borrowers without the prior written consent of Lender.

SEVERABILITY: If any provision(s) of this agreement are prohibited or are otherwise unenforceable, that shall not affect the enforceability or validity of any other provision of this agreement and all other provisions shall remain valid and enforceable.

LOAN DOCUMENTS: Lender shall be entitled, in all cases, to retain in its file the originals of all documents evidencing the loan, even after the full payment of the loan by Borrowers.

WAIVER: The Borrowers and other parties to this transaction (except the Lender), and each of them, whether principal, surety, guarantor, endorser, or other party, agree to be jointly and severally bound and, further, waive demand, protest, or nonpayment, and agree that the liability of each shall be unconditional without regard to the liability of any other party and shall not be affected by any indulgence, extension or extensions of time, renewal, waiver, release of any party or of any Collateral, or other modifications granted or consented to by the Lender. The rights and powers granted to the Lender hereunder shall not, nor shall any provision hereof, be waived except in writing signed by the Lender, and the provisions hereof shall not be modified, limited or waived by and prior or subsequent course of dealing between the parties or between the Borrowers and third parties or by any usage of trade. To the extent the Bank gives or has given value to the Lender to enhance herein, either by way of lease or discount, the Borrowers hereby waive any and all other defenses or right of offset which the Borrowers or any of them may or might have against the Lender when this document is held by the Bank. To continue and confirm, or the exertion of subject of others.

MODIFICATION: No modification of this document or any related document shall be enforceable unless it is in writing, expresses consideration and is signed by the party against whom enforcement is sought. Oral agreements or commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (the Borrowers) and us (the Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

REPORTING: Lender, its agents, successors, and assigns may report Borrowers' name and information regarding this loan and all of Borrowers' past and future loans to credit reporting agencies.

LOAN SERVICING FEES: During the term of the Loan, for each request by the Borrowers that the Lender take an action which involves a change to, or amendment to, or a deviation from the terms of the Loan and each such request by the Borrowers requires action by the Lender to make a determination whether to grant such a request, or, for example, a request by Borrowers for a release from the security interest in favor of the Lender of all or a part of the Collateral for the Loan, Borrowers shall pay to the Lender such fee as the Lender deems appropriate to compensate it for the continuation of the Borrowers' request. If the Borrowers do not immediately pay such fee to the Lender, may increase the Loan Account by the amount of each such fee. Borrowers further agree that (a) the payment of such fee shall be due and that (b) days after the increase by the Lender of the Loan Account, (c) interest as provided in the Promissory Note/Loan Agreement shall accrue on each such fee from the date of the increase of the Loan Account, (c) actual interest as provided in the Promissory Note/Loan Agreement shall accrue on each such fee that is not paid in full by Borrowers by the end of the ten day period, and (d) each such fee and the accrued interest thereon shall be secured by the Promissory Note/Loan Agreement.

POWER OF ATTORNEY: In addition to any other Power of Attorney granted herein by the Lender, Borrowers hereby further irrevocably appoint Lender as Borrowers' attorney-in-fact to act for Borrowers with full authority in the place and stead of Borrowers to take any action and to execute any instrument which Lender may deem reasonable to accomplish the purposes of the Promissory Note/Loan Agreement, including authority (a) to endorse, collect, demand, sue for, compromise, and receive any checks, drafts, warrants, instruments, documents, or monies due in connection with the Collateral; (b) to file any action or institute any proceedings which Lender may deem desirable for the collection of any of the Collateral or to otherwise enforce the rights of Lender with respect to any of the Collateral; and (c) in Lender's discretion, the priority of perfect, continue or perfected, preserve, enforce, or terminate Lender's rights and interests under the Promissory Note/Loan Agreement, including, but not limited to, authority to execute on Borrowers' behalf UCC Financing Statements, Effective Financing Statements, and Farm Products Central Notice attachments. Lender may charge the expenses of doing any of the foregoing to the Loan Account or the Obligations of Borrowers to Lender. Borrowers shall pay to Lender those amounts so charged within ten (10) days after the date Lender so charges them. Interest as provided in the Promissory Note/Loan Agreement shall accrue on those amounts from the date Lender so charges them and default interest as provided in the Promissory Note/Loan Agreement shall accrue if the expenses are not timely paid by the Borrowers.

PARTIES BOUND: Each person signing the Note, other than the Lender, is a Borrower. The obligations of all Borrowers under this Loan and all Borrowers hereby acknowledge receipt of all proceeds of the Loan. This Agreement benefits the Lender, its successors, and assigns. This Agreement shall bind the Borrowers, the Borrowers' heirs, personal representatives, successors, and assigns and all persons and parties who become bound as a Borrower under this Agreement.

FEE & CHARGES: Lender has authority to change and Borrowers agree to pay any reasonable fees and costs charged by Lender to account the terms of this Loan. Borrowers give Lender authority to advance such fees and costs and charge them to the loan if Borrowers do not immediately repay such amount, interest in the default rate shall begin to accrue on the amount advanced. The absence of express authority in the Promissory Note/Loan Agreement to charge a specific fee or cost to Borrowers shall not be construed as a prohibition on the charging of such fees or costs.

STATE LAW DISCLOSURES:

(a)  The following provision applies only if the State of Governing Law is Illinois acknowledged

INSURANCE: Unless you (the Borrowers) provide us (the Lender) with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests. This coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required for your agreement. If we purchase insurance for the Collateral, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

(b)  The following provision applies only if the State of Governing Law is Oregon—

Insurance Warning. Unless you provide us with evidence of the insurance coverage as required by our loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere. You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your loan balance. If the cost is added to your loan balance, the interest rate on the underlying loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage. The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

(c)  The following provision applies only if the Collateral includes crops growing or to remain in Hood (Idaho)—

This security statement covers crops now growing. This security statement also covers future crops to be grown in the current year or any year hereafter.

EXHIBIT A

| Bank | B.O. No. | CM No. | Loan No. | Product Code | Officer's Name | Commitment Amount |
|------|----------|--------|----------|--------------|----------------|-------------------|
| 70 | 883 | 3312092 | 1237987200 | 1500 | Koon's Farms Inc | $376,886.50 |

## ADDENDUM TO NOTE/LOAN AGREEMENT
TC312(6/10)

This Addendum is a part of, and contains additional terms and conditions for, a Promissory Note/Loan Agreement ("Note") dated April 22, 2011 in the principal sum of $376,886.50, evidencing a loan extended by Producers Credit Corporation ("Lender") to the Borrowers. Unless waived in writing by the Lender, until all liabilities of the Borrowers under this loan have been paid and satisfied in full, the Borrowers covenant and agree as follows:

1.  The security interest granted by Borrowers to Lender in the Promissory Note/Loan Agreement covers the following described property:

    All of the following items whether now owned or hereafter acquired, all additions or accessions thereto and all products and proceeds thereof:

    · All crops growing, grown, or to be grown in 2011 and the subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops.

    · All seed, fertilizer, chemicals and petroleum, and any other crop input products.

    · All contract rights, chattel paper, documents, instruments, accounts, general intangibles, and cash and non-cash proceeds from the sale, exchange, collection, or disposition of any of the Collateral.

    · All entitlements and payments, whether in cash or in kind, arising under any governmental, whether federal or state, agricultural subsidy, deficiency, diversion, conservation, disaster, or any similar or other programs.

    · All farm and business machinery, equipment and tools.

2.  Additional Loan Conditions. Each of the following is a condition of the Loan and a failure by the Borrowers to satisfy the terms of any of these conditions shall also be an event of default under the Promissory Note/Loan Agreement.

    · UCC lien is required by Lender on all crops, crop inputs, and all proceeds thereof.

    · UCC lien is required by Lender on all farm and business machinery, equipment and tools now owned or hereafter acquired

    · Crop insurance coverage at a level of at least the value of the crops financed with the proceeds of the Loan shall be obtained and maintained by the borrower with the Lender listed as loss payee and all crop insurance proceeds remitted to Lender if insurance assignment is available.

    · Joint checks are required, a list of all potential buyers of all crops will be provided to Lender at loan closing, unless provided on the application.

    · Loan deficiency government payment assignments if available concerning any and all crops shall be executed by the borrower to Lender

    · Direct and Counter-cyclical and Average Crop Revenue Election government payment assignments if available concerning any and all crops shall be executed by the borrower to Lender.

    · A personal guaranty of this loan by all officers of the corporation is required.

    · Amendments (signed) to entity(ies) shall be provided to the Lender within ten (10) days after the execution thereof

    · Post-plant crop inspection and report is to be completed by the dealer.

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Colleen McGuire 866-822-7402

**B. SEND ACKNOWLEDGEMENT TO:**

| | |
|---|---|
| Name | PROPARTNERS FINANCIAL (AgriSpan) |
| Address | P O BOX 64949 |
| Address | ST PAUL, MN 55164 |
| City/State/Zip | |

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2011 Apr 29 08:00 AM

****** 201104497695 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names**

| 1a. ORGANIZATION'S NAME KOON'S FARMS, INC. | | | | | |
|---|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 1c. MAILING ADDRESS 1007 NE SHADY OAK ROAD | CITY MAYO | STATE FL | POSTAL CODE 32066 | | COUNTRY USA |
| 1d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION | 1e. TYPE OF ORGANIZATION CORP | 1f. JURISDICTION OF ORGANIZATION FL | | 1g. ORGANIZATIONAL ID# P09000100762 ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME-INSERT ONLY ONE DEBTOR NAME (2a OR 2b)-Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME KOON | FIRST NAME SIDNEY | MIDDLE NAME C | | | SUFFIX |
| 2c. MAILING ADDRESS 1007 NE SHADY OAK ROAD | CITY MAYO | STATE FL | POSTAL CODE 32066 | | COUNTRY USA |
| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | | 2g. ORGANIZATIONAL ID# ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)- INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME PRODUCERS CREDIT CORPORATION c/o AgriSpan representative | | | | | |
|---|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | | SUFFIX |
| 3c. MAILING ADDRESS P O BOX 64949 | CITY ST PAUL | STATE MN | POSTAL CODE 55164 | | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All of the following whether now owned or hereafter acquired; all products and proceeds thereof, all additions or accessions thereto, and all substitutions and replacements thereof: All crops growing, grown, or to be grown in 2011 and subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops. All seed, fertilizer, chemicals and petroleum, and any other crop input products. All inventory, contract rights, chattel paper, documents, instruments, supporting obligations, accounts, general intangibles, and cash and noncash proceeds from the sale, exchange, collection, or disposition of any of the Collateral. All entitlements and payments, whether in cash or in kind, including but not limited to agricultural subsidy, deficiency, diversion, conservation, disaster, contract reserve, under any government or any similar or other programs. All farm and business machinery, equipment and tools.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA** SOS, FL   4/22/11

STANDARD FORM - FORM UCC-1 (REV.12/2001)   Filing Office Copy   Approved by the Secretary of State, State of Florida — Miller/Davis Co., St. Paul, MN

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE
# FINANCING STATEMENT FORM—ADDENDUM

**8. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

**8a. ORGANIZATION'S NAME**

KOON'S FARMS, INC.

| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

**9. MISCELLANEOUS**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME · INSERT ONLY ONE DEBTOR NAME (10a OR 10b) · Do Not Abbreviate or Combine Names**

**10a. ORGANIZATION'S NAME**

| 10b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | | MIDDLE NAME | | | SUFFIX |
|---|---|---|---|---|---|---|---|---|
| KOON | | | JULIE | | S | | | |

| 10c. MAILING ADDRESS | | | CITY | | STATE | POSTAL CODE | | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| 1007 NE SHADY OAK ROAD | | | MAYO | | FL | 32066 | | USA |

| 10d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION | 10e. TYPE OF ORGANIZATION | 10f. JURISDICTION OF ORGANIZATION | 10g. ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | ☐ NONE |

**11. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)· INSERT ONLY ONE SECURED PARTY NAME (11a OR 11b)**

**11a. ORGANIZATION'S NAME**

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. This FINANCING STATEMENT covers** ☐ **timber to be cut or** ☐ **as-extracted collateral, or is filed as a** ☐ **fixture filing.**

**13. Description of real estate:**

**15. Additional collateral description:**

**14. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):**

**16. Check only if applicable and check only one box**

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or

☐ Decedent's Estate

**17. Check only if applicable and check only one box**

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years

☐ Filed in connection with a Public-Finance Transaction – effective 30 years



FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2011 May 13 08:00 AM

\*\*\*\*\*\* 201104636016 \*\*\*\*\*\*

## FILING OFFICER STATEMENT

### INTERNAL USE ONLY

1. Identification of the Record to which this FILING OFFICER STATEMENT relates.

1a. INITIAL FINANCING STATEMENT FILE #
201104497695

1b. RECORD # TO WHICH THIS STATEMENT RELATES
201104497695

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

2. [ ] Describe the inaccuracy or mistake on the part of the filing office.

THE DOCUMENT SPECIALIST ERRONEOUSLY OMITTED THE DEBTOR NAME "KOON JULIE S" FROM THE ORIGINAL UCC-1 DOCUMENT. THE CORRECTION WAS MADE ON 5/13/11 AND NOW THE RECORDS INCLUDE "KOON JULIE S" AS A DEBTOR.

3. [ ] Describe filing office administrative action taken as a result of inaccuracy or mistake (including date of each action).

FILING CLERK
CW

DATE THIS FILING OFFICER STATEMENT WAS FILED

FILING OFFICE COPY — FILING OFFICER STATEMENT

For value received, PRODUCERS CREDIT CORPORATION c/o ProPartners Financial, P O Box 64949, St Paul, MN assigns, without warranty and without recourse, to the MAYO FERTILIZER, INC., all of its rights, title, and interest in and to (1) a certain promissory note dated April 22, 2011, payable to its order in the amount of Three-Hundred-Seventy-Six-Thousand-Six-Hundred-Ninety-Six-and-50/100 Dollars ($376,696.50), executed by Koon's Farms Inc., Sidney C Koon, and Julie S Koon, (2) a certain UCC-1 financing statement executed by Koon's Farms Inc., Sidney C Koon, and Julie S Koon to it as the secured party and filed on April 29, 2011 as financing statement number 201104497695 in the Office of the Secretary of State, Florida.

PRODUCERS CREDIT CORPORATION

By: _____
Patrick O'Meara, Authorized Representative

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
## FINANCING STATEMENT AMENDMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Eloise Anding                                    (866) 822-7402

B. SEND ACKNOWLEDGEMENT TO:

Name    PROPARTNERS FINANCIAL

Address   PO BOX 64949

Address

City/State/Zip   ST PAUL                 MN          55164

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

2012 Feb 06 08:00 AM

****** 20120612586X ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #<br>201104497695 | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed<br>[for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|---|

2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME   KOON'S FARMS, INC. | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME   PRODUCERS CREDIT CORPORATION c/o AgriSpan representative | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

4. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

5. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

6. ✓ ASSIGNMENT (full or partial): Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

7. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record  Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c

☐ DELETE name: Give record name to be deleted in item 8a or 8b.

☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names

| 8a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names

| 9a. ORGANIZATION'S NAME   MAYO FERTILIZER INC | | | | | |
|---|---|---|---|---|---|
| 9b. INDIVIDUALS' LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 9c. MAILING ADDRESS<br>413 WE McCLOSKEY AVENUE, PO BOX 1911 | CITY<br>LAKE CITY | | STATE<br>FL | POSTAL CODE<br>32055 | COUNTRY<br>USA |
| 9d. TAX ID# | 9e. REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 9c. TYPE OF ORGANIZATION | 9f. JURISDICTION OF ORGANIZATION | | 9g. ORGANIZATIONAL ID#<br>NONE |

10. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☑ restated collateral description, or describe collateral ☐ assigned.

11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME   PRODUCERS CREDIT CORPORATION c/o AgriSpan representative | | | |
|---|---|---|---|
| 11b. INDIVIDUALS' LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.12/2001)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## SECURITY AGREEMENT

| Debtor Name & Address ("Debtor"). Koon's Farms, Inc., Sidney C. Koon & Julie S. Koon 1007 NE Shady Oaks Rd. Mayo, Florida 32066 Debtor is: ☒ Individual, ☐ Partnership, ☒ Corporation, ☐ Other Debtor is organized in the State of _____ | Creditor Name & Address ("Creditor"). Mayo Fertilizer, Inc. P.O. Box 357 Mayo, FL 32066 |
| --- | --- |

Creditor and Debtor whose addresses appear above, agree as follows:

1.    Security Interest/Collateral. Debtor hereby grants to Creditor a security interest in all the collateral listed below, following a box marked with an "X" (the "Collateral"), together with all substitutions, replacements, products and proceeds thereof, whether now owned or hereafter acquired.

☒    Crops, and Farm Products. All Debtor's crops whether growing or to be grown; all Debtor's farm products, grains, feed, seed, fertilizers, agricultural chemicals and other supplies used in Debtor's business or farming operations;

☐    Livestock and Poultry. All Debtor's livestock and poultry, including young, unborn young, and eggs.

☒    Equipment. All Debtor's farm machinery, vehicles, furniture, manufacturing equipment, shop equipment, office equipment and other equipment of any description;

☒    Inventory. All Debtor's inventory of any kind or description, including all raw materials, work in progress, or other materials consumed in Debtor's business;

☒    Accounts, General Intangibles, Documents, Chattel Paper and Other Rights to Payment. All Debtor's accounts, accounts receivable, insurance receivables, deposit accounts, prepayments, chattel paper, general intangibles, payment intangibles, documents of title, bills of lading, warehouse receipts, instruments, notes, investment, and property, certificated and uncertified securities;

☒    Government Payments/Programs. All payments, accounts, general intangibles, or other benefits, (including without limitation payments in kind, deficiency payments, quota payments, letters of entitlement, storage payments, emergency assistance program payments, diversion payments, and conservation reserve payments) in which Debtor now has or in the future may have any rights or interest, and which arise out of any past, now existing or future federal, state, county, or local governmental program; and,

☐    Other Collateral. In addition the collateral includes, but not limited to the collateral described on Exhibit "A" hereto.

2.    Indebtedness. The security interest in the Collateral is given to secure the payment and performance of all debts, liabilities and obligations owed by Debtor to Creditor of any nature, including, without limitation, those arising under any promissory note, invoice, contract, credit agreement, understanding, accounts, guaranty, loan agreement, mortgage, deed of trust, stock pledge agreement, security agreement (including this Agreement) and any modifications, replacements, substitutions, extensions, refinancings, or renewals of any of the foregoing, together with expenses, including attorney fees, incurred or paid by Creditor in the preservation or enforcement of Creditor's rights under any of the foregoing all whether now existing or hereafter created or otherwise arising. These obligations shall be collectively referred to herein as the "Indebtedness."

3.    Preservation of Collateral/Inspection/Inventory. Debtor hereby agrees to do all things necessary to maintain, preserve, and protect the Collateral and to be responsible to Creditor for any loss or damage thereto. Debtor agrees not to cause any waste or unreasonable depreciation of the Collateral. The risk of loss of the Collateral shall be on Debtor at all times and Debtor shall promptly pay when due all taxes, assessments, liens or encumbrances levied on or against the Collateral hereunder or for its use or operations, except such as it may in good faith contest or as to which a bona fide dispute may arise. Debtor shall allow access to the Collateral and any documents or records related thereto for inspections by Creditor on demand, and shall provide upon request by Creditor a detailed inventory of all Collateral including serial and VIN numbers; brands; ear tag numbers and tattoos identifying any livestock; and the addresses and legal descriptions of land on which any crops are growing or will be grown, livestock is located; or any farm products, equipment, farm machinery, or other Collateral are stored or otherwise located. Debtor shall maintain insurance acceptable to Creditor including appropriate crop insurance, listing Creditor as an additional insured thereon. Creditor may (but shall not be

obligated to) obtain such insurance as Creditor deems appropriate, including "single interest" insurance the cost of which shall be added to the Indebtedness owed by Debtor and secured by this Agreement.

4.     Cooperation. Debtor will from time to time, at its expense, perform all acts and execute all documents requested by Creditor, including the obtaining, executing, delivering or filing of financing statements, effective financing statements, amendments, assignments of government payments, or insurance proceeds, and renewals thereof, in order to create, perfect, maintain and enforce a valid lien upon, pledge of, or security interest in all of the Collateral in Creditor's favor. Creditor is expressly authorized by Debtor to file financing statements and effective financing statements on Debtor's behalf, without Debtor's signature to the extent allowed by the Uniform Commercial Code as adopted in the State of Florida ("UCC") or other applicable law; or to sign as necessary on behalf of Debtor, any documents necessary or desirable to perfect or maintain Creditor's security interest in all of the Collateral under the UCC, the Food Security Act or other applicable law. Debtor shall provide upon request to Creditor any financial statements, state and federal tax returns, and accounting reports, as Creditor shall reasonably request.

5.     Power of Attorney. Debtor hereby appoints Creditor as its true and lawful attorney in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from, or in connection with the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment of the Collateral; (c) to settle or compromise any and all claims arising with respect to the Collateral, and, in the place and stead of Debtor, to execute and deliver its release and settlement for any such claim; (d) to execute on Debtor's behalf all documents necessary to assign or direct payments of any government subsidies, allocations, or payments of any nature and of any insurance proceeds of any nature; and (e) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Debtor, or otherwise, which in the discretion of Creditor are necessary or advisable for the preservation of the Collateral. This power is coupled with an interest in the Collateral; and is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Creditor in writing.

6.     Notice of Sale of Collateral, Crop, Farm Products, and Livestock. Debtor shall, at least seven (7) days prior to any sale, transfer, or consignment of crops, livestock or other farm products deliver to Creditor a written list of all buyers, commission merchants, and selling agents (including addresses and phone numbers) to or through whom Debtor may sell any farm products as defined under the Federal Food Security Act of 1985 ("FSA"). Creditor is hereby authorized to give written or oral notice to any person of its security interest as required or permitted under the UCC, the FSA, or other applicable law. Creditor is further authorized to instruct the recipient of such notice to issue all proceeds from the sale of the Collateral directly to Creditor or jointly to Debtor and Creditor whether or not the Debtor is in default hereunder. Creditor may disclose the Social Security or taxpayer identification number of Debtor, together with such other information as must or may be included for an effective notice under law.

7.     Affirmative Representations, Warranties and Covenants. Debtor represents, covenants, and warrants the following: (a) The information supplied and statements made by Debtor in any financial, credit or accounting statement or credit applications or in any reports, lists, or statements submitted to Creditor are true and correct when made, and have not become untrue or incorrect by subsequent actions or events that have not been disclosed to Creditor by Debtor in writing; (b) The person executing this Agreement is duly authorized and empowered to execute this Agreement on Debtor's behalf; and, the execution, delivery and performance hereof are within Debtor's power, have been duly authorized, are not in contravention of law or the terms of Debtor's Charter, Articles, Bylaws or other incorporation papers (when a corporation) or of any indenture, agreement or undertaking to which Debtor is a party or by which it is bound; and (c) Debtor shall immediately notify Creditor if Debtor's place of organization, or principal place of business changes from the address listed herein or if any Collateral is to be removed from the Debtor's principal place of business.

8.     Events of Default. Debtor shall be in default under this Agreement upon the occurrence of any of the following events or conditions: (a) Failure by Debtor to timely pay any Indebtedness to Creditor, including, but not limited to principal, interest, or finance charges, when due; (b) Breach, default, termination, or failure to perform by Debtor of any obligation, covenant, warranty, agreement, or promise, under any contract, agreement, invoice, guaranty, note, mortgage, deed of trust, security agreement, stock pledge, or undertaking in favor of Creditor, or any affiliate of Creditor, or any third party including, without limitation, those existing under this Agreement; (c) Any warranty, representation, or statement including financial statements and inventories of Collateral provided by Debtor to Creditor are false or misleading in any material respect; (d) This agreement, or any related note, contract, agreement, open account, invoice or guaranty ceases to be in full force and effect or is in any manner deemed unenforceable, including the failure of any such documents to create or maintain a valid perfected security interest; (e) The commencement of any suit for foreclosure or forfeiture proceeding against Debtor, entry of any judgment, restraining order, or injunction against Debtor, or the instigation of any action to enforce any such judgment, restraining order or injunction, which in Creditor's sole discretion materially and adversely effects Debtor's operations or ability to repay the Indebtedness or perform its obligations under this

Agreement; (f) Death, dissolution, termination of existence, or insolvency of Debtor; appointment of a receiver over any of the property of Debtor; assignment for the benefit of Creditor or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor. Insolvency means Debtor's inability to generally pay its debts in the ordinary course of business as they become due or that Debtor's liabilities exceed its assets. It is understood by the parties that the continuation of Debtor's solvency is an integral and necessary condition of the Creditor's willingness to extend credit to Debtor; and (g) The sale of any of the Collateral without Creditor's prior express consent.

9.     **Remedies Upon Default.** Upon the default of Debtor and without any notice to Debtor, Creditor shall have all the rights and remedies available under this Agreement by statute, contract, at law and/or in equity, including but not limited to the right to declare all Indebtedness owed to Creditor immediately due and payable and to peacefully remove any and all of the Collateral from Debtor's premises, custody or control, and dispose of the same as allowed under the Uniform Commercial Code; to enter upon the premises where any crops are being grown, and at Creditor's discretion using Debtor's equipment, machinery, wells and other improvements of any nature perform any and all actions necessary or desirable to grow, care for, maintain, harvest, store, preserve and protect said crops and any farm products or inventory; and enter upon any premises where any Collateral consisting of livestock are located to feed, inoculate, and care for any such livestock utilizing at Creditor's discretion, Debtor's equipment or improvements. Creditor may require Debtor to deliver to Creditor all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Creditor may require Debtor to assemble the Collateral and make it available to Creditor at a place to be designated by Creditor. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Debtor agrees Creditor may take such other goods, provided that Creditor makes reasonable efforts to return them to Debtor after repossession. Debtor acknowledges and agrees that one principal consideration Creditor is receiving in exchange for its extension of credit to Debtor is the ability to setoff or net against amounts owed by Debtor to Creditor, any credit balances or amounts owed (including any pre-paid amounts) to Debtor by Creditor, or any parent, subsidiary or affiliate of Creditor. Debtor therefore agrees that Creditor may so net and setoff any such obligations whether owed directly between Debtor and Creditor, or owed between Debtor and any parent, subsidiary, or affiliate of Creditor.

10.    **Remedies Cumulative.** All of Creditor's rights and remedies, whether evidenced by this Agreement or by any other agreement, note, contract or understanding between Debtor and Creditor, shall be cumulative and may be exercised singularly or concurrently. Election of Creditor to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Debtor under this Agreement, after Debtor's failure to perform, shall not affect Creditor's right to declare a default and to exercise its remedies.

11.    **Miscellaneous.** (a) All agreements, covenants and warranties are severable, and in the event any of them shall be held to be invalid, this Agreement shall be interpreted as if such invalid agreement or covenant was not contained herein; (b) This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective affiliates, heirs, successors and assigns; (c) This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral and written, among the parties hereto with respect to the subject matter hereof; (d) All representations, warranties and covenants made in or pursuant to this Agreement are continuing, and shall survive the execution hereof; (e) This Agreement may be executed in one or more counterparts, each of which will be deemed an original and all of which together will constitute the same Agreement; (f) This Agreement shall be governed by and construed in accordance with the laws of the State of Florida; (g) TO THE EXTENT PERMITTED BY APPLICABLE LAW, IN ANY SUIT OR PROCEEDING RELATING TO THIS AGREEMENT, THE PARTIES MUTUALLY WAIVE TRIAL BY JURY; (h) TO THE EXTENT PERMITTED BY APPLICABLE LAW, THIS AGREEMENT MAY BE ENFORCED IN A COURT OF COMPETENT JURISDICTION SITTING IN LAFAYETTE COUNTY, FLORIDA AND DEBTOR WAIVES ANY ARGUMENT THAT SUCH FORUM IS NOT CONVENIENT; and (i) All notices which are required or may be given pursuant to the terms of this Agreement shall be in writing and shall be sufficient in all respects if given in writing and delivered personally, or by facsimile and confirmed by mail, or mailed by registered, certified or express mail, postage prepaid, or reputable overnight courier, to the address stated above for Debtor and Creditor.

EXECUTED this 26th day of April, 2011.

Debtor:

By: _____

Sidney C. Koon

Its:    President – Koon's Farms, Inc.

Mayo Fertilizer, Inc.

By: _____

Its: _____

Security Agreement dated: April 26, 2011

Debtors: Koon's Farms, Inc., Sidney C. Koon & Julie S. Koon

Creditor: Mayo Fertilizer, Inc.

Additional Debtors:

By: _____
Sidney C. Koon, individually

By: _____
Julie S. Koon, individually

## CONTINUING UNCONDITIONAL GUARANTY

FOR VALUABLE CONSIDERATION, including the inducement of Creditor to extend credit to Debtor as hereinafter defined, receipt of which is hereby acknowledged, the undersigned (whether one or more "Guarantor"), (jointly and severally if more than one) absolutely and unconditionally guaranty to Creditor (as hereinafter defined), the full and prompt payment of all Indebtedness (as hereinafter defined) which exist now or may arise in the future owing from the following or any successor, affiliate, or assign thereof (hereinafter referred to as "Debtor"):

Debtor Name: Koon's Farms, Inc.

Debtor is: a corporation

This Guaranty is made without any agreement or expectation of indemnity from Debtor.

"Creditor" means Mayo Fertilizer, Inc., a Florida corporation.

"Indebtedness" means all debts, liabilities and obligations owing by Debtor to Creditor of any nature, including, without limitation, those arising under any promissory note, account, invoice, contract, understanding, or loan agreement, mortgage, deed of trust, stock pledge agreement or agreement, and any extension, renewal, or replacement of any of the foregoing, whether now existing or hereafter created between Debtor and Creditor, including, without limitation, all attorney's fees, filing fees, court costs, other costs and expenses incurred in the enforcement of any such debt or obligation. Guarantor's obligations under this Guaranty are unconditional and continuing, and are not subject to any setoffs, adjustments or credits and apply to each Debtor if more than one is described above.

Creditor may enforce this Guaranty without first resorting to the Debtor or realizing upon any collateral interest granted by Debtor or any other persons. Guarantor agrees that Creditor has full authority to and may, without notice to or further consent from Guarantor or Debtor and without in any manner affecting Guarantor's liability hereunder: (a) substitute or release any security; (b) release in whole or part Debtor, Guarantor, surety or any other person who may be responsible for payment of all or a portion of the Indebtedness; (c) renew, extend or modify, in whole or part, the terms relating to payment of the Indebtedness including extending the time for payment; (d) settle or compromise the terms of the Indebtedness; (e) delay or forbear from exercising Creditor's rights against Debtor, Guarantor, any third party, or against any collateral given as security for the Indebtedness; (f) accept partial payments from Debtor or anyone else on account of Indebtedness; (g) fail to perfect any security interest or otherwise impair any collateral given as security for the Indebtedness; (h) release or substitute any collateral given as security for the Indebtedness; (i) procure additional security or guaranties of persons who agree to be liable for any of the Indebtedness; (j) delay, refuse or fail to enforce the collection of the Indebtedness; (k) extend new, additional, or unrelated credit to Debtor; and (l) assign the Indebtedness, in whole or part, to any third party; all without releasing Guarantor from any of the obligations contained herein.

Guarantor waives notice of acceptance of this Guaranty, notice of the creation, existence of maturity of all Indebtedness, notice of default or extension of time, protest, presentment, demand for payment, notice of dishonor and diligence in collection.

Notwithstanding anything to the contrary in this Guaranty, Guarantor hereby irrevocably waives all rights Guarantor may have at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Creditor) to seek contribution, indemnification or any other form of reimbursement from Debtor, any other guarantor, or any other person now or hereafter primarily or secondarily liable for any obligations of Debtor to Creditor, for any disbursement made by Guarantor, or either of them, under or in connection with this Guaranty or otherwise.

GUARANTOR AGREES TO INDEMNIFY AND HOLD CREDITOR HARMLESS FROM AND AGAINST ANY LIABILITY ASSERTED AGAINST CREDITOR BASED UPON ANY CLAIM OR LEGAL ACTION FILED AGAINST CREDITOR BASED IN WHOLE OR PART UPON A CLAIM UNDER 11 U.S.C. §§ 544, 547(b), 548(a) OR 550 RESULTING FROM OR CONNECTED WITH THIS GUARANTY.

Guarantor hereby understands, acknowledges and agrees that the invalidity of any provision of this Guaranty as determined by a court of competent jurisdiction shall in no way affect the validity of any other provision hereof.

Guarantor represents and warrants to Creditor that: , (i) Guarantor has had an opportunity to review the terms of this Guaranty; (ii) understands the terms hereof and enters into this Guaranty freely and voluntarily; (iii) this Guaranty is given to guaranty a non-consumer business debt, (iv) the Guaranty is given voluntarily by the Guarantor, who is actively involved in the Debtor's business operations or will otherwise benefit therefrom such that good and valuable consideration in addition to any other consideration sufficient to support this Guaranty has been received; and (v) the individual executing this guaranty is fully authorized and empowered to enter into this guaranty on behalf of Guarantor, and the same is fully enforceable according to its terms.

This Guaranty shall be effective upon delivery to Creditor, without further act, condition or acceptance by the Creditor, shall be binding upon the Guarantor and the heirs and assigns of the Guarantor, and shall inure to the benefit

of the Creditor and its successors and assigns. This Guaranty supercedes the "Individual Guaranty for Entity Debt," if any, contained in the Credit Application and Agreement executed by Debtor and Guarantor. This Guaranty represents the final agreement between the parties with respect to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. This Guaranty may be modified only by a written agreement signed by both Guarantor and Creditor. THERE IS NO OTHER AGREEMENT BETWEEN GUARANTOR AND CREDITOR RELATED TO THIS GUARANTY.

Any invalidity or enforceability of any provision or application of this Guaranty shall not affect other lawful provisions and application hereof, and to this end, the provisions of this Guaranty are declared to be severable.

This Guaranty is continuing and covers all Indebtedness whether now existing or future Indebtedness; and regardless whether at any point or time the Indebtedness to Creditor may have been paid in full or otherwise extinguished. This Guaranty shall remain in full force and effect until any existing or future Indebtedness owed to Creditor is paid in full. Notwithstanding the irrevocable nature of this Guaranty, if Guarantor delivers notice of the revocation thereof to Creditor and if the effectiveness of such revocation is upheld in any appropriate court action, Guarantor shall nevertheless remain liable under this Guaranty with respect to (i) all Indebtedness in existence at the time of Creditor's receipt of such notice of revocation, (ii) any Indebtedness arising from future advances which Creditor is, at the time of such receipt, committed to make, even though such future advances are made after Creditor's receipt of such notice, and (iii) any amendments, modifications, renewals, refinancing, extensions of, or other liabilities arising out of, any such Indebtedness described in (i) or (ii) whether occurring before or after Creditor's receipt of such notice of revocation.

This Guaranty shall be governed and construed in accordance with the laws of the State of Florida. Should Creditor be required to hire an attorney to enforce the terms of this Guaranty or should litigation be required to enforce this Guaranty, Guarantor agrees to pay to Creditor its reasonable attorney's fees, costs and out-of-pocket expenses incurred in the enforcement hereof.

THIS GUARANTY MAY BE ENFORCED IN ANY COURT OF APPROPRIATE JURISDICTION SITTING IN Lafayette COUNTY, Florida AND GUARANTOR WAIVES ANY ARGUMENT THAT SUCH FORUM IS INCONVENIENT. TO THE EXTENT PERMITTED UNDER APPLICABLE LAW CREDITOR AND GUARANTOR WAIVE THEIR RIGHTS TO ANY JURY TRIAL WITH RESPECT TO ANY LITIGATION ARISING UNDER, OR IN CONNECTION WITH THIS GUARANTY.

Guarantor, by signing below, acknowledges its credit history and financial condition may be a necessary factor in the extension of credit and evaluation of this Guaranty, and hereby expressly consents to and authorizes Creditor to obtain, review, and utilize a credit report on the undersigned from time to time as Creditor deems appropriate.

If this guaranty is signed by more than one party, each such party acknowledges and agrees that they shall be jointly and severally liable hereunder, and that such liability shall continue and survive the incapacity, lack of authority, death or disability of one or more Guarantor and shall not operate to release or excuse the liability of any other guarantor hereunder. The terms hereof shall apply to each Guarantor jointly and severally as if they had each executed a separate guaranty.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this document the dates hereinafter written.

| | |
|---|---|
| DATED April 26, 2011 | DATED April 26 , 2011 |
| GUARANTOR NAME & ADDRESS: | GUARANTOR NAME & ADDRESS: |
| Sidney C. Koon | Julie S. Koon |
| 1007 NE Shady Oaks Rd | 1007 NE Shady Oaks Rd. |
| Mayo, Florida 32066 | Mayo, Florida 32066 |
| | |
| Guarantor Signature | Guarantor Signature |
| Type Name: Sidney C Koon | Type Name : Julie S. Koon |
| Its: Individually | Its: Individually |
| Title of Signatory | Title of Signatory |

STATE OF FLORIDA UNIFORM COMMERCIAL CODE
FINANCING STATEMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Harry J. Johnson  386-752-3155

B. SEND ACKNOWLEDGEMENT TO:
Name   Mayo Fertilizer, Inc.

Address  P. O Box 357

Address

City/State/Zip  Mayo, FL 32066

FLORIDA SECURED TRANSACTION REGISTRY

**FILED**

2011 Jun 09 08:00 AM

****** 201104744323 ******

1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a ORGANIZATION'S NAME Koon's Farms, Inc. | | | | | | |
|---|---|---|---|---|---|---|
| 1b INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c MAILING ADDRESS Line One 1007 NE Shady Oak Road | | This space not available. | | | | |
| MAILING ADDRESS Line Two | | CITY Mayo | | STATE FL | POSTAL CODE 32066 | COUNTRY USA |
| 1d TAX ID# 24-1506736 | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 1e TYPE OF ORGANIZATION | 1f JURISDICTION OF ORGANIZATION | | 1g ORGANIZATIONAL ID# ☐ NONE | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| 2b INDIVIDUAL'S LAST NAME Koon | | FIRST NAME Sidney | | MIDDLE NAME C | | SUFFIX |
| 2c MAILING ADDRESS Line One 1007 NE Shady Oak Road | | This space not available. | | | | |
| MAILING ADDRESS Line Two | | CITY Mayo | | STATE FL | POSTAL CODE 32066 | COUNTRY USA |
| 2d TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 2e TYPE OF ORGANIZATION | 2f JURISDICTION OF ORGANIZATION | | 2g ORGANIZATIONAL ID# ☐ NONE | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3a ORGANIZATION'S NAME Mayo Fertilizer, Inc. | | | | | | |
|---|---|---|---|---|---|---|
| 3b INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c MAILING ADDRESS Line One P. O. Box 357 | | This space not available. | | | | |
| MAILING ADDRESS Line Two | | CITY Mayo | | STATE FL | POSTAL CODE 32066 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the following whether now owned or hereafter acquired; all products and proceeds thereof, all additions or accessions thereto, and all substitutions and replacements thereof All crops growing, grown, or to be grown in 2011 and subsequent years. All harvested crops. All warehouse receipts or other documents(negotiable or non- negotiable) issued for storage of such crops. All seed, fertilizer, chemicals and petroleum, and any other crop input products. All inventory, contract rights, chattel paper, documents, instruments, supporting obligations, accounts, general intangibles, and cash and noncash proceeds from the sale, exchange, collection, or disposition of any of the collateral. All entitlements and payments, whether in cash or in kind, including but not limited to agricultural subsidy, deficiency, diversion, conservation, disaster, contract reserve, under any government or any similar or other programs  All farm and business machinery, equipment and tools.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG. LIEN | ☐ NON UCC FILING | ☐ SELLER/BUYER |

6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

7. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-1 (REV.01/2009)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
## FINANCING STATEMENT FORM – ADDITIONAL PARTY

18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT

18a. ORGANIZATION'S NAME

Koon's Farms, Inc.

| 18b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. MISCELLANEOUS:

20. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (20a OR 20b) – Do Not Abbreviate or Combine Names

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Koon | Julie | S. | |

20c. MAILING ADDRESS Line One

1007 NE Shady Oak Road

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | Mayo | FL | 32066 | USA |

| 20.d TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 20.e TYPE OF ORGANIZATION | 20.f JURISDICTION OF ORGANIZATION | 20.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | ☐ NONE |

21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (21a OR 21b) – Do Not Abbreviate or Combine Names

21a. ORGANIZATION'S NAME

| 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

21c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 21.d TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 21.e TYPE OF ORGANIZATION | 21.f JURISDICTION OF ORGANIZATION | 21.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | ☐ NONE |

22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (22a OR 22b) – Do Not Abbreviate or Combine Names

22a. ORGANIZATION'S NAME

| 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

22c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 22.d TAX ID# | REQUIRED ADD'L INFO RE ORGANIZATION DEBTOR | 22.e TYPE OF ORGANIZATION | 22.f JURISDICTION OF ORGANIZATION | 22.g ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | ☐ NONE |

23. ADDITIONAL SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (23a OR 23b)

23a. ORGANIZATION'S NAME

| 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

23c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

24. ADDITIONAL SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (24a OR 24b)

24a. ORGANIZATION'S NAME

| 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

24c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

STANDARD FORM - FORM UCC-1 ADDITIONAL PARTY (REV.01/2009)   Filing Office Copy   Approved by the Secretary of State, State of Florida

*Crop Insurance Division*
*49 East Fourth Street, Suite 400*
*Cincinnati, Ohio 45202 - 3803*

☐ Specified Peril Crop Insurance
☐ Catastrophic Crop Insurance
☐ Multiple Peril Crop Insurance

*Great American Insurance Company*
(Company Name)

## ASSIGNMENT OF INDEMNITY

### ASSIGNMENT

*Corn & Peanuts*     *2011*     *2011 - FL.084.1046018*
(Name of Insured Crop(s))    (Crop Year)    (Policy No.)

The undersigned, *Koon's Farms, Inc.*
(Name of Insured)(Original Insured Only)

of *1007 NE Shady Oak Rd., Mayo, Florida 32066*
(Full Mailing Address)

(herein referred to as the "Insured") assigns to *Mayo Fertilizer, Inc.*
(Name of Lender/Creditor)

of *P.O. Box 357, 300 SE Clyde Av., Mayo, Florida 32066*
(Full Mailing Address)

(herein referred to as the "Lender") the right and interest of any indemnity payment(s) which may be payable to the Insured under the insurance policy for the crop(s) and crop year(s) shown above.

### CONDITIONS

(1) This assignment will be binding upon the person(s) who succeed the Insured's interest in the insurance policy (2) Indemnity payment(s) made under the insurance policy will be subject to a deduction for any indebtedness due this Company by the Insured. (3) This Assignment will not grant the Lender any greater rights than originally held by the Insured. (4) The Lender's interest will be recognized upon Company approval of this assignment and the Lender will have the right to submit the loss notices and other forms as required by policy. (5) The Company will determine the person(s) entitled to any indemnity payment(s) and the payment(s) will be by joint check. (6)Cancellation of this assignment prior to the crop year(s) stated above will be accepted by the Company only only upon notification in writing by the above identified Lender.

It is understood and agreed that this assignment will be subject to the terms and conditions of the insurance policy.

_____
(Signature of Insured)

_____
(Signature of Witness)

*4·26-11*
(Date)

*Mayo Fertilizer, Inc.*
_____
(Signature of Lender)

_____
(Signature of Witness)

*4-26-11*
(Date)

FILING

This assignment was filed with the Company on *7/4/11* , at *12* *a.m.* *p.m.*
(Date)      (Hour)

### APPROVAL OF COMPANY

The Company hereby approves the foregoing assignment. *Great American Ins*
(Company Name)

_____
(Authorized Representative)

*618 #2 N. Westover Blvd* *Albany,*
(Address)     *GA 31707*

*7/4/11*
(Date)

Adapted from FCI - 20

**RECEIVED**
JUN 28 2011

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

                                        Case No.: 3:12-bk-00275-PMG
                                        and Case No. 3:12-bk-00274-PMG

KOON'S FARMS, INC.,

        Chapter 12 Debtor,

and
                                          Jointly Administered Under
                                        Case No. 3:12-bk-00275-PMG

SIDNEY CURTIS KOON and
JULIE SINGLETARY KOON,

        Chapter 12 Debtors.

_____/

LAFAYETTE STATE BANK, a Florida
corporation,

        Plaintiff,

v.                                        Adv. Case No. 3:12-ap-00098-PMG

RABO AGRIFINANCE, INC., a foreign
corporation, KOON'S FARMS INC., a
Florida corporation; SIDNEY KOON,
individually, and JULIE KOON,
individually,

        Defendants.

_____/

ORDER APPROVING INTERVENTION
AND FINAL CONSENT JUDGMENT

        THIS CAUSE came before the Court on _____, for consideration of the *Joint*

*Motion for Intervention of Mayo Fertilizer, Inc., and for Entry of Final Consent Judgment* (the

"Joint Motion"), filed by the Debtors, Koon's Farms, Inc. ("Koon's Farms"), Sidney Curtis Koon

and Julie Singletary Koon (collectively, the "Chapter 12 Debtors"), joined by secured creditors,

Rabo Agrifinance, Inc. ("Rabo"), Mayo Fertilizer, Inc. ("Mayo Fertilizer") and Lafayette State

Bank ("Lafayette"), collectively referred to herein as the "Movants." The Court, having reviewed the Court's file in this adversary proceeding, including the Joint Motion, having considered the evidence relating to the respective secured claims of the secured creditors in the Escrow Funds (defined below), and being otherwise duly advised in the premises, finds that the Joint Motion is supported by competent evidence and is well-taken.

Based upon the evidence before the Court, the Court finds as follows:

1.   This Court has jurisdiction over this adversary proceeding (this "Adversary Proceeding"), the parties to this Adversary Proceeding and over the claims asserted in this Adversary Proceeding, pursuant to 28 U.S.C. §§ 157 and 1334, and other applicable law. The subject matter of this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   On January 18, 2012 (the "Petition Date"), the Chapter 12 Debtors filed respective voluntary petitions for relief under Chapter 12 of the Bankruptcy Code, thereby initiating the above-captioned bankruptcy cases (the "Bankruptcy Cases").

3.   The Bankruptcy Cases were administratively consolidated by order of this Court entered on February 8, 2012 [Doc. Nos. 17, 34].

4.   Since the Petition Date, the Chapter 12 Debtors have continued in the ownership of their assets and operation of their businesses as debtors-in-possession, pursuant to Bankruptcy Code § 1203, and the orders of this Court.

5.   Douglas W. Neway has been appointed in the Bankruptcy Cases as the Chapter 12 Trustee, pursuant to Bankruptcy Code §1202.

6.   On or about November 23, 2011, and prior to the Petition Date, Lafayette filed an action in the Circuit Court of the Third Judicial Circuit, in and for Lafayette County, Florida,

2

captioned *Lafayette State Bank v. Rabo Agrifinance, Inc., a foreign corporation, Koon's Farm, Inc., a Florida corporation, Sidney Koon, individually, and Julie Koon, individually,* Case No. 11-204 CA (the "State Court Action").

7.      On or about January 27, 2012, a *Notice of Removal* [AP Doc. No. 1] was filed and the State Court Action was removed to this Court, and now proceeds as this Adversary Proceeding.

8.      On February 8, 2012, this Court entered in the Bankruptcy Cases, an *Order Directing the Endorsement and Negotiation of Checks and the Establishment of Escrow Account Pending the Determination of Lien Priority Disputes Between Creditors, Lafayette State Bank and Rabo Agrifinance, Inc.* (the "Escrow Order") [Doc. No. 36].

9.      Pursuant to the terms of the Escrow Order, certain checks which represent aggregate funds of approximately One Million, Nine Thousand, Seven Hundred Twenty-four and 11/100 Dollars ($1,009,724.11), were endorsed and deposited into the Lafayette State Bank Koon's Farms Escrow Account (the "Escrow Account"), established as a result of the Escrow Order. Subsequent to the entry of the Escrow Order, an additional $5,333.53 has been deposited in the Escrow Account, bringing the total balance in the Escrow Account to approximately $1,018,057.64 (the "Escrow Funds").

10.     Mayo Fertilizer has asserted an interest in the Escrow Funds, and has sought this Court's allowance of Mayo Fertilizer's intervention as a party-Defendant in this Adversary Proceeding in order to have its claims in the Escrow Funds adjudicated by this Court. All of the Movants have consented to this intervention.

11.     This Court finds that the Joint Motion further satisfies the obligations and requirements of Federal Rule of Bankruptcy Procedure 7024, and Federal Rules of Civil Procedure 24(a)(2), 24(b)(1)(B), and 24(c), and other applicable law.

12.     The Chapter 12 Debtors have recognized the existence of certain valid and perfected security interests in the Escrow Funds, in favor, respectively, of Rabo, Mayo Fertilizer and Lafayette (collectively, the "Interested Secured Creditors").

13.     Based upon the existence of these valid and perfected security interests, and further based upon the Chapter 12 Debtors' interest in payment of and reduction to certain claims in the Bankruptcy Cases of the respective Interested Secured Creditors, the Chapter 12 Debtors desire to have the Escrow Funds paid to the respective Interested Secured Creditors in accordance with the respective priority of the valid and perfected security interests possessed by the Interested Secured Creditors.

14.     The Court has analyzed the respective priorities of the Interested Secured Creditors' secured claims in the Escrow Funds, and finds that it should enter final judgment adjudicating the validity, extent and priority of the claims of the respective Interested Secured Creditors in the Escrow Funds, and authorizing the distribution of same from the Escrow Account.

**Accordingly, it is hereby ORDERED AND ADJUDGED:**

1.     Mayo Fertilizer is hereby allowed to intervene as a party-Defendant in this Adversary Proceeding in order to have its claims in the Escrow Funds adjudicated by this Court.

2.     Rabo possesses a first priority, valid and perfected security interest, in the Escrow Funds, based upon Rabo's loan to the Chapter 12 Debtors (the "Rabo Loan") and Rabo's UCC filing 20100214154 dated March 10, 2010.  Rabo's first priority secured claim is properly calculated as follows:

4

| | | |
|---|---|---|
| a. | Principal Balance of Secured Claim: | $700,570.21 |
| b. | Accrued Interest through 3/13/2012: | $48,520.09 |
| c. | Accrued Attorneys' Fees and Costs: | <u>$61,300.00</u> |
| | **Total** | **$810,390.30** |

In addition to the foregoing, Rabo's secured claim shall bear interest at the per diem rate of $102.05 per day, per day until paid in full from the Escrow Funds, representing per diem interest calculated at the non-default rate of 5.244% per annum. Accordingly, Rabo's interest in the Escrow Funds is hereby adjudicated as valid and perfected to the extent of $810,390.30, together with accrual of per diem interest to be calculated as noted above, and Rabo's interest in the Escrow Funds shall be paid in full from the Escrow Funds. This payment will result in Rabo having no further claims in the Bankruptcy Cases. The entry of this order approving this compromise, and this final judgment in the Adversary Proceeding shall be conclusively and irrevocably deemed to be a full and final release and discharge of any and all claims and causes of action by and between Rabo (together with its predecessors, successors, legal representatives, officers, directors, employees, and agents) on the one hand and the Chapter 12 Debtors, or any of them, on the other which in any way pertains or relates to the Rabo Loan.

3.     Mayo Fertilizer possesses a second priority, valid and perfected security interest in the Escrow Funds, based upon Mayo Fertilizer being the assignee of certain additional claims and security interests of Producer's Credit Corporation, a/k/a ProPartners Financial, UCC filing 201104497695 dated April 29, 2011, in the amount of $397,653.35 with an aggregate principal balance of Mayo Fertilizer's claims in the amount of $601,217.07, without consideration of accrued interest or attorneys' fees and costs. Accordingly, Mayo Fertilizer's secured interest in the Escrow Funds is hereby adjudicated as valid and perfected to the extent of all remaining

portions of the Escrow Funds, subject only to the first priority interest of Rabo to the extent noted in paragraph 2, above. This payment will be a partial payment of Mayo Fertilizer's claims, and will result in Mayo Fertilizer retaining additional claims in the Bankruptcy Cases.

4.      Based upon the foregoing, the interests of Lafayette are not secured by the Escrow Funds. Accordingly, Lafayette will receive no disbursement of the Escrow Funds, but will retain its right to assert claims in the Bankruptcy Cases.

5.      Lafayette is hereby authorized and directed to immediately disburse all of the funds from the Escrow Account by issuing and delivering checks as follows:

a.      a check in the amount calculated pursuant to paragraph 2, above, made payable to Rabo Agrifinance, Inc., which shall be delivered to the attorneys for Rabo; and

b.      a check for the balance remaining in the Escrow Account after making the aforementioned payment to Rabo, made payable to Mayo Fertilizer, Inc., which shall be delivered to the attorneys for Mayo.

Upon making the aforementioned payments, Lafayette shall close the Escrow Account and shall have no further obligations or liability with respect thereto.

6.      This Court retains jurisdiction over this Adversary Proceeding to enter such further orders and judgments are necessary in order to enforce the terms of this Final Consent Judgment, and to enter such further orders and judgments that this Court deems just and proper.

DONE AND ORDERED in Chambers at Jacksonville, Florida, on _____.


HONORABLE PAUL M. GLENN
United States Bankruptcy Judge


# 550388 v2